### SMITH et al. v. TRADERS & GENERAL INS. CO.

### No. 3018.

Court of Civil Appeals of Texas. Eastland.

May 15, 1953.

Rehearing Denied June 5, 1953.

Carter, Gallagher, Roberts & Jones, Dallas, for appellants.

Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellee.

LONG, Justice.

Mrs. Vernice Smith, the widow of Emmett Thorne Smith, individually and as next friend for David Thorne Smith, the minor son of deceased, Emmett Thorne Smith, brought this suit against Traders & General Insurance Company for death benefits under the Workmen's Compensation Act. A jury was waived and judgment was rendered in favor of the insurance company. Plaintiffs have appealed.

The case was tried solely upon an agreed stipulation of facts which stipulations, in part, are as follows:

"That prior to the 6th day of July, 1951, N. H. Williams, one of the owners of the Winkler County News, had purchased all of the equipment of a small newspaper owned by Harley Hightower of Dallas, Texas, the printing equipment being located in Dallas, Texas. That N. H. Williams was desirous of coming to Dallas, Texas, for the purpose of inspecting such printing equipment purchased to determine what part of the equipment he could use in his own newspaper plant and to determine what part of such equipment was to be sold to others. In this connection it was his desire to have his employee, Emmett Thorne Smith, accompany him on the trip inasmuch as Emmett Thorne Smith was his composing room superintendent and would be of material assistance in determining what part of the equipment could be used and what part could be sold.

"That on July 6, 1951, N. H. Williams instructed Emmett Thorne Smith to accompany him to Dallas for

the purpose of inspecting such equipment, and that they left their homes and place of business on the morning of July 6th and drove to Dallas in N. H. Williams' automobile. That N. H. Williams had agreed to pay and was to pay all expenses incurred by Emmett Thorne Smith in such trip to Dallas, Texas. That N. H. Williams and Emmett Thorne Smith arrived in Dallas at approximately 7:00 P.M. on July 6, 1951, and registered at the Jefferson Hotel in Dallas, Texas, and were assigned to Room 717 on the seventh floor of said hotel. That after arrival in Dallas, N. H. Williams and Emmett Thorne Smith contacted Harley Hightower and made arrangements to meet him at 8:00 A.M. on July 7, 1951, for the purpose of looking over the purchased equipment. That N. H. Williams and Emmett Thorne Smith also scheduled a truck to be at the printing shop formerly owned by Harley Hightower at 12:00 noon on July 7th for the purpose of transporting the usable equipment back to Kermit for the Winkler County News.

"Following these arrangements, N. H. Williams asked Emmett Thorne Smith whether or not he would desire to take a drink of liquor, and Emmett Thorne Smith, the employee, readily agreed to such suggestion; whereupon, N. H. Williams produced a fifth of bourbon whiskey from his suitcase. Following this and for a period of approximately one hour, N. H. Williams and Emmett Thorne Smith drank from the bottle of liquor so produced by N. H. Williams, and during such time the two men drank approximately two-thirds of said bottle. That while said employer and employee were engaged in consuming the aforementioned whiskey, they began telephoning friends of theirs in the printing trade in the city of Dallas for the purpose of seeking companions for the evening, and finally did contact and prevail upon one Cecil O. Hill to join them in their hotel room. Hill arrived at the hotel room at approximately 8:00 P.M. on July 6th.

"That prior to operating the Winkler County News, N. H. Williams had formerly worked for the A. H. Belo Corporation, publishers of the Dallas Morning News in Dallas, Texas. Cecil O. Hill had been a co-employee of N. H. Williams for some years prior to the occasion in question but had never met Emmett Thorne Smith previously. That shortly after 8:00 P.M. after having several more drinks, N. H. Williams and Emmett Thorne Smith accompanied Cecil O. Hill to the plant of the Dallas Morning News and inspected same, said newspaper plant being a recent construction and containing therein the latest of all newspaper equipment.

"Following the inspection of the plant of the A. H. Belo Corporation, the three men returned to the Jefferson Hotel and went to Room 717. Upon arriving at Room 717, the three men consumed the remainder of the original fifth of whiskey. Thereupon, N. H. Williams, employer, wanted more whiskey for the occasion and gave Cecil O. Hill some money, the exact amount being unknown, and asked him to procure additional liquor. Cecil O. Hill gave the money to Emmett Thorne Smith, and Smith departed from the room and returned in approximately fifteen minutes with two additional fifths of whiskey. The three men then drank one of said fifths of whiskey and a portion of the other.

"At this time of the evening, it then being approximately 10:00 P.M., the three men went to a tavern near the Jefferson Hotel in Dallas, Texas, known as the Water Front Cafe, and consumed several rounds of beer.

"Following this, the above mentioned three men left the Water Front Cafe and went to a place of business known as Squeege's Bar and there consumed more beer. By this time of

the evening the men were beginning to feel the effects of alcohol, and the three men engaged in some argument with the personnel of the bar, and a slight altercation took place, at which time they were asked to leave Squeege's Bar by reason of their boisterous conduct.

"The men then returned to Room 717 on the seventh floor at the Jefferson Hotel, and three of them there commenced drinking more whiskey. N. H. Williams became intoxicated and it is thought that he completely passed out and while in an unconscious state lay on the floor of the hotel room. This occurred at approximately midnight or shortly thereafter. Emmett Thorne Smith became intoxicated but was able to stand on his feet and, so far as is known, did not pass out.

"Either before N. H. Williams passed out or after he passed out, some nature of altercation took place either between Cecil O. Hill and Emmett Thorne Smith or among Cecil O. Hill, Emmett Thorne Smith and N. H. Williams, the exact nature of which is unknown and unascertainable, but in any event, as a result of said altercation, Cecil O. Hill was struck in the mouth, the blow breaking a dental plate and knocking loose some of his teeth. As a result of such blow Cecil O. Hill went to the bathroom of the hotel room in question for the purpose of washing his face, spitting out his broken teeth and attending his cuts and bruises. While Cecil O. Hill was in the bathroom so engaged, N. H. Williams was in an unconscious state on the floor of the hotel room.

"While N. H. Williams was passed out on the floor and while Cecil O. Hill was in the bathroom, Emmett Thorne Smith in some manner fell from the window of the hotel room, and, as a result thereof, met his immediate death. Said death occurred at approximately 1:00 A.M. on July 7, 1951, and resulted from an injury received while the said Emmett Thorne Smith was in a state of intoxication."

The insurance company pleaded that the death of Emmett Thorne Smith resulted from an injury received while he was in a state of intoxication and that on the occasion in question, Smith was not in the course of his employment. By a supplemental petition, plaintiff alleged that the defense of intoxication was not applicable because the employer originated and participated in the drinking activities of the deceased and that by reason thereof, defendant was estopped from setting up the defense of intoxication. Article 8309, section 1, Vernon's Annotated Civil Statutes provides that:

"The term 'injury sustained in the course of employment,' as used in this law, shall not include:

*    *    *    *    *    *

"3. An injury received while in a state of intoxication."

It was agreed on the trial that the injury was received by Smith while he was in a state of intoxication. We believe this fact was a complete defense to plaintiff's cause of action. Traders & General Insurance Company v. Williams, Tex.Civ.App., 66 S.W.2d 780. The fact that the employer of Smith may have originated and participated in the drinking of intoxicants with Smith has no bearing on the situation. Section (3) of Article 8309, section 1, is plain and unambiguous. It clearly declares that an injury received while in the state of intoxication is not an injury sustained in the course of employment. We believe that the holding of this court in an opinion by the then Chief Justice Hickman, who is now Chief Justice of our Supreme Court, in the case of Texas Indemnity Ins. Co. v. Dill, Tex.Civ.App., 42 S.W.2d 1059, and affirmed by the Commission of Appeals in 63 S.W.2d 1016, is decisive of this question. The trial court was correct in holding that plaintiffs could not recover and in rendering judgment for defendant.

The judgment of the trial court is affirmed.