85 So.2d 619 (1956)
GREAT AMERICAN INDEMNITY COMPANY, Petitioner,
v.
Doretha WILLIAMS, James E. Battle, Sonja Melissa Williams, Audrey Faye Williams, and The Florida Industrial Commission, Respondents.
Supreme Court of Florida. Special Division A.
February 22, 1956.
*620 Samuel Kassewitz, Jacksonville, for petitioner.
Norman P. Freedman, Jacksonville, for respondents Doretha Williams, James E. Battle and Sonja Melissa Williams.
Ernest J. Jacobs, Jacksonville, for respondent Audrey Faye Williams.
Burnis T. Coleman and Rodney Durrance, Tallahassee, for respondent Florida Industrial Commission.
TERRELL, Justice.
This is a petition for certiorari to review an order of Florida Industrial Commission affirming an order of the Deputy Commissioner awarding the claimants' attorneys fees in the amount of $900 for representing them (claimants) before the Deputy Commissioner. Said attorneys were also allowed fees in the sum of $600 for representing claimants before the full Commission in the same cause growing out of the following facts:
December 11, 1953, Arthur J. Williams sustained injuries arising out of and in the course of his employment from which he died the same day. Four days after his death, the carrier secured a statement from the "alleged wife" [Doretha Williams] of the deceased, in which she said she was married to him in January, 1951, and that they separated in October, 1951. She also stated that she and deceased had one child, Audrey Faye Williams, born in 1950 prior to their marriage. It was subsequently shown, and found by the Deputy Commissioner, that the deceased and Doretha had another child born October 12, 1952, more than a year after the deceased and Doretha separated. The birth certificate of the latter child, Sonja Williams, does not show the name of the father. Doretha Williams also testified that she had a son, James E. Battle, born in 1947, and that the deceased had not contributed to her support or the support of said son since they were separated. She also testified that she and the deceased had not secured a divorce and so far as she knew, no proceedings had been instituted for one.
December 23, 1953, after investigation, the carrier wrote the Florida Industrial Commission as follows:
"This is to advise you that we stand ready and willing to pay compensation in connection with the above fatal case, which arises out of an accident which occurred on December 11, 1953.
"It will be necessary for the Florida Industrial Commission to determine the proper beneficiary or beneficiaries to receive payment of compensation, and this is a request that they proceed to the necessary investigation for the purpose of determining that question.
"We shall appreciate your instructions and advices."
It is quite evident from the language in the letter, "We stand ready and willing to pay compensation," that the carrier admits liability but it contends that the investigation and determination of the lawful beneficiary is the function of the Industrial Commission and therefore the burden of attorneys fees should not be placed upon it. December 30, 1953, the Director of the Commission acknowledged receipt of the quoted letter but denied that it was the responsibility of the Industrial Commission to investigate and determine the lawful *621 beneficiaries. He contends to the contrary that such responsibility was on the adjusters for the insurance carrier. The Director then requested the carrier to investigate the matter and submit such information to the Deputy Commissioner as would enable him to determine the lawful beneficiaries and the order or preference, if any, including the amount of compensation that should be made to them.
On May 14, and June 7, 1954, after due notice, hearings were held before the Deputy Commissioner. No compensation was paid to claimants during this period. The attorneys for the claimants and the attorney for the carrier appeared at these hearings and participated in them. Counsel for the carrier not only participated but filed in evidence various exhibits. Most of said hearings involved adversary matters among the various claimants to establish their right to compensation under the act. The mother of the deceased, Hattie Haywood, also represented by counsel, testified that the deceased supported her and contributed to the support of Audrey Faye Williams who was in her custody. The carrier did not controvert the lawful claims but expressed willingness to pay compensation to those whom the Deputy Commissioner found rightfully entitled to it.
The Deputy Commissioner found that Doretha Williams was the widow of the deceased, that she was dependent upon him for support but that she was living apart from him for justifiable cause at the time of his death. The Deputy Commissioner also found that James E. Battle was the stepchild of the deceased and that he was dependent upon deceased for support and was entitled to compensation. He further found that Sonja Williams and Audrey Williams were children of Doretha and deceased and that they were entitled to compensation. The Deputy Commissioner further found that the mother of deceased was dependent upon him for support but account of the limits of 60% as set forth in Section 440.16, F.S., F.S.A., he did not award her any compensation. He accordingly awarded the widow 35% of the average weekly wage and each child 8 1/3% of the average weekly wage the result being that the widow will receive $12.88 per week, and each child will receive $3.06 per week. The reason for setting forth these amounts is to show that they are so inordinately small that to impose the attorneys fees upon the claimants would work such hardship on them as to defeat the real purpose of the Workmen's Compensation Act.
Having disposed of the question of compensation, the Deputy Commissioner proceeded to the more difficult question of awarding attorneys fees to the successful claimants' attorneys. He concluded that under Section 440.34, F.S., F.S.A., attorneys for the successful claimants were entitled to compensation and that their fees should be paid by the carrier. He based this finding on the holding that it was incumbent upon the carrier and not the Industrial Commission to make the investigation. When Section 440.20(8), F.S., F.S.A., is read in conjunction with Section 440.16, F.S., F.S.A., said the Deputy Commissioner, this conclusion is evident. The Deputy Commissioner concluded that a reasonable fee for both attorneys representing the successful claimants would be $900. On appeal to the full Commission, the finding of the Deputy Commissioner was affirmed on a two to one judgment.
The sole question before the full Commission was that of attorneys fees. The full Commission held that since the carrier "declined" to pay the claims on or before the 21st day after notice, Section 440.34(1), F.S., F.S.A., was activated and accordingly entitled the successful claimants' attorneys to a reasonable fee. The full Commission further held that the essential feature of the Workmen's Compensation Act was its self-executing framework and that the benefits under it were intended to pass directly from the carrier to the beneficiary. In effect it construed Section 440.16, F.S., F.S.A., to mean that the survivors had definite rights that arose upon the death of the employee and the Commission had but a discretionary power to alter statutory allocation of benefits on its own motion or application of an interested party. It *622 further held that the Deputy Commissioner was correct in his holding that "this can only mean that the employer or carrier may pay in accordance with the provisions of Section 440.16(2) (a) and (c), F.S. [F.S.A.], and then after payments have been commenced, the Commission or some interested party, feeling that such percentages are not just and proper, asks that consideration be given to changing them. In the instant case, had the carrier paid in accordance with Section 440.16(2) (a) and (c), F.S. [F.S.A.], it would have been entitled to credit for such payments even if thereafter the Commission, by its Order, required payment in a different ratio. Section 440.16 obviously does not intend to compel the Commission to enter an order in each and every death case, directing to whom compensation should be paid. If the carrier's contention with respect to this section is correct, then death benefits could never be paid except after an order by the Commission."
The dissenting Commissioner contended that the carrier should not have been impressed with claims totalling more than 105% of the average weekly wage; that there were many contradictory statements about who was the father of one of the children, whether the widow left the deceased for cause and that it was inequitable to require the carrier to pay an attorney's fee assessed on the same basis as if the carrier had denied liability for the accident or had controverted dependency of any and all claimants. The dissenting Commissioner also contended that it was difficult to visualize a set of facts which more strongly indicated that the full Commission should make the investigation provided in Sec. 440.25, even though Sec. 440.20(8) was technically limited. In this connection, the minority of the Commission contended that if the legislature had intended that if failure to pay a claim within 20 days after the carrier had notice thereof, would obligate the carrier to pay an attorney's fee, regardless of the circumstances, it would have been extremely simple for Sec. 440.34(1), F.S., F.S.A., to have used the word "fail" rather than "decline."
The sole question raised in this court is the same as that which confronted the full Commission, that is to say, are the successful claimants under Sec. 440.34(1), F.S., F.S.A., entitled to an award of attorneys fees to be paid by the carrier?
The answer to this question turns in the main on the interpretation of Sec. 440.34(1), F.S., F.S.A., as follows:
"If the employer or carrier shall file notice of controversy as provided in § 440.20 of this chapter, or shall decline to pay a claim on or before the twenty-first day after they have notice of same, or shall otherwise resist unsuccessfully the payment of compensation, and the injured person shall have employed an attorney at law in the successful prosecution of his claim, there shall, in addition to the award for compensation be awarded reasonable attorneys fee, to be approved by the commission which may be paid direct to the attorney for the claimant in a lump sum. If any proceedings are had for review of any claim, award or compensation order before any court, the court may allow or increase the attorney's fees, in its discretion, which fees shall be in addition to the compensation paid the claimant, and shall be paid as the court may direct."
In our view the letter from the carrier, quoted above, advising that it stood ready and willing to pay compensation was not such a compliance with the requirements of the act as would avoid invoking its requirement to pay the claim. The pertinent part of the said statute as applied to this case is that the carrier did decline to pay a "claim" on or before the 21st day after they had notice of same. Willing to pay "compensation" is not the same as willing to pay a specific claim.
In this connection it is not amiss to point out that the carrier raised the point of decision in good faith and reasons might be recited to relieve it from payment but we think that in view of the philosophy and purpose of workmen's compensation, there *623 are countervailing reasons which require it to pay. There were five claimants to compensation, the mother, wife and three children, one of whom was a stepchild. The paternity of the children was in question as was the question of whether or not the putative wife was entitled to recover compensation. It was necessary to determine which of these parties were entitled to compensation. The carrier was vitally interested in the answer to these questions as was the Industrial Commission. While the act does not in terms say so, we think the burden was on the Industrial Commission or the Deputy Commissioner to make the investigation to determine these questions and that the claimants were entitled to representation at the investigation. This may not be true in all cases but when as here it is found to be true, attorneys fees may be imposed under the statute, Sec. 440.34(1), F.S., F.S.A. In this holding we do not overlook Balatsos v. Nebraska Ave. Cafe and Liquor Store, 159 Fla. 71, 30 So.2d 633, relied on by the carrier, but we do not think it rules the case at bar.
We have frequently held that the purpose of the Workmen's Compensation Act is to provide for the injured workman and in the event of his death from injuries received in his employment, to provide for the dependents so that the burden does not fall on society but on the industry served. Any other conclusion than that reached in this case would not serve the purpose of the act. Whitehead v. Keene Roofing Co., Fla., 43 So.2d 464; Florida Game & Fresh Water Fish Commission v. Driggers, Fla., 65 So.2d 723. Moreover in construing the act, the court must read the statute in the light of the whole act, since only from the whole can the legislative intent be gained. Zee v. Gary, 137 Fla. 741, 189 So. 34. Even in doubtful cases under the Workmen's Compensation Act, this court has held that such doubt should be resolved in favor of claimant. Sanford v. A.P. Clark Motors, Fla., 45 So.2d 185. We are not unmindful of the rule that the award of attorneys fees is in derogation of common law and that acts for that purpose should be construed strictly. Weathers for Use and Benefit of Ocean Accident & Guarantee Corp. v. Cauthen, 152 Fla. 420, 12 So.2d 294. Moreover we are inclined to the view that the carrier was, as the Deputy Commissioner found, such an interested party in the proceedings as to justify imposition of attorneys fees under Sec. 440.34, F.S., F.S.A. This court has on numerous occasions held that dependency within the act is a question of fact and the status of the marriage at the time of the death is an important factor in entitling the wife to compensation. See Tigertail Quarries v. Ward, 154 Fla. 122, 127, 16 So.2d 812; Hillyer & Lovan v. Florida Industrial Commission, 155 Fla. 144, 19 So.2d 838.
We are mindful of the ambiguities in the statute and the fact that in everyone's opinion there is said to be a residuum of error but we think this interpretation is in accord with the exigencies of the situation.
Certiorari is accordingly denied.
DREW, C.J., and HOBSON and O'CONNELL, JJ., concur.