**MAY v. WRIGHT & LOPEZ, Inc., et al.**

Industrial Commission.

January 8, 1957.

Jesse T. Butler, Latham & Mizelle, and William D. Barfield, all of Jacksonville, for claimant.

Lloyd C. Leemis, Jacksonville, for the employer and insurance carrier.

WILLIAM L. DURDEN, Deputy Commissioner.

After due notice to all interested parties hearings on this claim were held on April 3, May 3, and November 16, 1956. The claimant was not present at any of such hearings but he was represented by counsel and it was agreed that his presence was not necessary. The employer and carrier were represented by counsel at each of such hearings.

At the first hearing it was stipulated and agreed that this commission has jurisdiction of the parties and of the subject matter. Although the accident occurred in Palatka, Putnam County, it was stipulated and agreed that venue be transferred to Duval County.

It was also stipulated and agreed that on April 6, 1954 the claimant sustained an injury by accident arising out of and in the course of his employment with the employer. At the time the claimant was employed as a foreman supervising a pole setting crew which was installing telegraph poles for the employer who had a contract for such work with the Southern Bell Tel. & Tel. Co. While so employed a derrick fell on his back causing severe injuries.

At the time of the first hearing it was established that the carrier had accepted the claimant's case as being one of permanent total disability and was paying the claimant at the maximum rate of compensation.

The only question before the commission is whether or not the attorneys for the claimant are entitled to an attorney's fee to be assessed against the carrier.

The accident occurred April 6, 1954. The employer's first report of injury was filed in Tallahassee on May 24, 1954. On May 28, 1954 the carrier issued its draft (claimant's exhibit #3) for 7 weeks' compensation covering the period from April 11 to May 29, 1954. It was not shown when this draft was tendered to the claimant. It was returned to the carrier by the attorney for the claimant by letter dated June 4, 1954 (claimant's exhibit #2). No issue was raised as to lateness of the tender, it was rejected altogether. The letter stated—"Inasmuch as we have filed suit under the Hazardous Occupation Law of Florida, rather than the Workmen's Compensation Act, said check is not acceptable."

The employer undoubtedly had knowledge of the accident on the day it occurred. Failure to make the first payment of compensation within 14 days thereafter undoubtedly constituted a technical violation of section 440.20. Despite this, it does not seem right to base a penalty thereon, for subsequent to such occurrence claimant's attorney specifically rejected the tender of compensation because he was then pressing a common law action and specifically stated he was not interested in pressing a claim under the compensation law. No penalty will be imposed because of this occurrence.

This failure to pay promptly also resulted in a technical violation of section 440.34. As applicable here that section states that "if the * * carrier * * shall decline to pay a claim on or before the twenty-first day after they have notice of same * * and the injured person shall have employed an attorney at law in the successful prosecution of his claim, there shall, * * " be awarded an attorney's fee. Here again it should be pointed out that at the time the attorney had not been employed to prosecute a claim under the Act but to prosecute a common law action. No attorney's fees can be based upon this occurrence.

Although other intervening matters may be discussed, it is my opinion that the claimant and his attorneys having elected to pursue a common law action and reject any procedure under the Workmen's Compensation Act, any fact, or action taken by the carrier, prior to the time the claimant reversed his position and asserted a claim under the Act cannot serve as a basis for assessing an attorney's fee. The claimant treated the matter as though there was no compensation claim pending and the carrier had the same right.

On June 28, 1954, the brother of the claimant filed what might be classified as a claim. Claimant's attorneys cannot find any comfort in the failure of the carrier to take any action on this matter. At that time and until over a year later the matter was controlled by the decision of the claimant and his attorneys not to make any claim under the Act. Under date of August 18, 1954 claimant's attorney not only failed to insist upon further action on this claim but stated to the commission that "no action can be taken by your office under the Workmen's Compensation Act."

The next set of facts and circumstances to be taken into consideration are those relating to the agreement between attorneys for the carrier and for the claimant as to the dismissal of the common law action and its effect on the workmen's compensation claim. A motion for summary judgment had been filed in that suit.

Ruling on the motion had, in accordance with a stipulation between the parties, been reserved pending the rendering of a decision by the U. S. court of appeals for the fifth circuit on the same question. Such stipulation provided that claimant's common law action be governed by the ruling made by the court of appeals. Based upon an adverse ruling by the court of appeals, claimant's common law action was dismissed on April 28, 1955 and subsequently, on May 4, 1955, an amendatory order was entered removing any prejudice as to the rights of claimant under the Florida Workmen's Compensation Act.

Claimant's counsel contended that the agreement of counsel for the carrier and the claimant regarding dismissal of the common law action had inherent in it an agreement that immediately upon dismissal of the law suit liability for the commencement of compensation payments would be effective, that there was no necessity for a further demand. First payment of compensation was not made until July 5, 1955. As this is more than 21 days after either April 28 or May 4, 1955, counsel claims responsibility of the carrier for an attorney's fee.

June 20, 1955 is also more than 21 days past either April 28 or May 4, 1955. Yet on that date, June 20, counsel for the claimant made a written demand for the payment of compensation and made no assertion whatsoever that the carrier was in default. This letter fortifies my conclusion that after a discontinuance of the common law action it took an affirmative act to initiate a claim for benefits under the Workmen's Compensation Act. That letter (claimant's exhibit #5) sufficiently serves that purpose.

It is my conclusion that up until the demand of June 20, 1955 the carrier had not done or failed to do any act which exposed itself to the imposition of an attorney''s fee. We should now turn our attention to occurrences subsequent to that time.

The letter of June 20, 1955 certainly serves as a notice of claim to the carrier. However, the first payment of compensation was made on July 5, 1955, and payments have been made regularly since that time. As there is no basis for the imposition of an attorney's fee arising out of this action the propriety of awarding an attorney's fee narrows itself down to the problem stated below.

Throughout the period from July to November, 1955, the correspondence and conferences between the carrier and claimant's attorney deal with obtaining payment of accumulated medical bills. There is no evidence to show that the carrier refused to honor any claim made for that purpose.

A review of the medical reports filed in evidence establishes that as late as December 16, 1955 claimant was receiving further medical care and had not been finally rated on a basis which would justify a conclusion that he was permanently and totally disabled. It appears that his attorney was furnished with copies of all medical reports.

There was some testimony as to discussions between counsel for the claimant and the carrier regarding claimant's permanent rating in September of 1955 but no decision was reached because of the impending operation and further medical care.

Subsequent to that time there were various discussions between counsel for the claimant and the carrier on whether or not claimant should be treated as a permanent total disability case, but I do not think a failure to comply with the demands of claimant's attorney made in telephone or personal conversations constitutes either a notice of claim by the claimant nor a declining to pay a claim by the carrier.

Ultimately, on January 26, 1956, claimant's attorney filed a notice of claim with the commission on the form and in the manner required by the statutes and rules of procedure. This claim asserted that claimant was permanently and totally disabled.

Correspondence between the carrier and the commission reveals that up to January, 1956 the carrier was not treating or carrying the case as one of temporary and total disability.

When this claim was filed asserting that claimant was permanently and totally disabled, I think it constituted a claim on behalf of the claimant that he was entitled to a right that he was not being granted and which he sought, through his attorney, to establish. There was medical evidence to justify that conclusion and there was medical evidence to establish that it was too early to give a permanent rating. The carrier could decide which it wanted to do and, under the provisions of section 440.34, had 21 days in which to agree to the conclusion asserted by claimant's attorney or go to a hearing and seek to establish the correctness of its position that it was too early to give a rating.

Unless a claimant has not reached his maximum point of improvement I do not believe the continued payment of compensation on a temporary total disability basis avoids the requirements of section 440.34. Here the carrier was paying compensation on a temporary total disability basis, but when confronted with the claim filed by claimant's attorney utterly abandoned its position that claimant was not yet ready to be rated.

I think continued payment on any basis, such as here, avoids the penalties of section 440.20 but I believe that section 440.34 stands on a separate and independent footing.

Whenever a claim is filed asserting a position different from that previously adopted by the carrier I feel that in order to avoid the provisions of section 440.34 allowing attorney's fees the carrier must either agree to such a claim or prove the correctness of its previous position. This is not unfair. If the carrier feels it is right it can deny the claim. If it feels the claimant is right it has 21 days to say so and by saying so within 21 days it avoids liability for an attorney's fee. Williams v. Southern Iron & Metal Co., 7 Fla. Supp. 128, cert. den. 85 So. 2d 619.

There was some disputed evidence on whether or not the carrier orally advised claimant's attorney, on January 26, 1956, that it would accept the claim as a total disability case. The adjuster says he did, the attorney for the claimant says he didn't. The adjuster says an office memorandum of the conference fortifies his position but he refused to produce the memorandum on motion by the attorney for the claimant.

Ruling on the motion was reversed but is here denied. The carrier asserted that this document fortified its position but if it is unwilling to voluntarily submit its own proof in support of such position on the grounds asserted by its counsel, I see no occasion to force it to do so. Such action does, however, force a trier of the facts to disregard any asserted support such a document is alleged to provide. Therefore, on this point, there is directly conflicting oral evidence.

Earlier in this opinion I avoided the necessity of deciding a point in favor of the claimant on the basis of disputed oral testimony. It, therefore, seems fair to reverse the situation and avoid the necessity of deciding a point in favor of the carrier on the basis of disputed oral testimony.

Here, the carrier had every reason to know that its position with regard to the claim filed on January 26, 1956 should be accepted or rejected with the same degree of certainty that it was asserted. Yet no definite evidence of its conclusion is available until the carrier wrote its letter to this office under date of February 17, 1956. Even in that letter the acceptance of the claim on a permanent total basis is couched in language stating an intention rather than a conclusion.

This letter is dated 22 days after the perfected claim was filed and an additional 7 or a total of 29 days after the original claim was filed with the commission. On either basis the carrier failed to

accede to the claim within 21 days after they had notice of the same and there has been a violation of section 440.34 so as to entitle the claimant to an attorney's fee.

Under my view the evidence submitted by the witness Butler in an effort to prove the assertions made in the request for admissions was insufficient and, so far as the conclusion reached is concerned, was immaterial. Therefore, the carrier is not required to pay for the cost of proving the contents of the request for admission. Mr. Butler was a witness in the cause and should be paid accordingly.

The majority of the work done by counsel for the claimant had no direct relation to establishing the assertion made in the claim upon which this order is based. Also the carrier has never denied that the claimant was very seriously and to a great extent permanently disabled. These facts, as well as those set forth as criteria in the decisions of the full commission and the Supreme Court have been taken into consideration in determining the amount of attorney's fee.

It is therefore ordered that the employer, Wright & Lopez, Inc., by and through the carrier, U. S. Fidelity & Guaranty Co.—(1) Pay to claimants attorneys $1,250 attorney's fees, and (2) Pay the costs of this proceeding.