PEARSON, Judge.
Appellant Michigan National Bank was the plaintiff in an action for replevin and to foreclose a claimed security interest in an aircraft. After a non-jury trial, the court entered a final judgment which, among other things, found that the Bank had no right to possession of the aircraft, that Henry Maierhoffer, a defendant, had title to the aircraft, except for an outstanding mechanics lien, and that damages were to be awarded to Maierhoffer against the Bank and its surety. The aircraft had by agreement been sold by the Bank after delivery of possession of the aircraft to the Bank. This appeal is by the Bank. In the main, the Bank contends that the evidence before the trial court was insufficient as a matter of law to support either of the findings (1) that Maierhoffer had title to the aircraft free of the Bank’s claimed lien; or (2) that Maierhoffer was entitled to the damages awarded, i. e., $60,000.00, as the value of the aircraft at the time of the replevin.
Defendant Maierhoffer has cross-appealed an order of the trial court denying his motion for attorney’s fees.
The trial judge made extensive findings of fact in the judgment. The Bank attacks the legal sufficiency of these findings to support the judgment and the sufficiency of the evidence to support the findings. The findings are quoted in full.

“Findings of Fact

“1. That Nor-Roz, Inc. d/b/a Safari Aviation (‘Nor-Roz’), was in the business of buying and selling aircraft.
“2. That Nor-Roz were floor plan dealers of the Michigan National.
*320 “3. That in 1975, Nor-Roz purchased a 1972 Queen Air N-814B for their inventory. On August 8, 1974, Nor-Roz and James N. Negron executed a promissory note in favor of Michigan National, in the principal sum of $78,697.80 secured by a chattle (sic) mortgage on the Queen Air N-814B. This chattle (sic) mortgage was filed with the Federal Aviation Administration (‘FAA’), on August 22, 1974, as Document No. N90760, recorded August 29, 1974.
“4. That on January 25,1975, Nor-Roz did; (sic) sell, grant, transfer, and deliver all rights, title and interests in Queen Air N-814B to H. Maierhoffer, c/o Cim Associates, Inc.
“5. That Maierhoffer took delivery of N-814B on January 25, 1975.
“6. That on February 2, 1975, Maier-hoffer purchased insurance on the aircraft naming Michigan National as loss payee and on the Breach of Warranty.
“7. That in February 1975, Maierhof-fer notified the bank of his purchase and sent copies of the purchase, and the insurance binder to Michigan National.
“8. That in April 1975, John Ward, vice president in charge of the aircraft division of Michigan National, came to Florida for the express purpose of checking the inventory of their floor plan dealer, Nor-Roz, and verified Maierhoffers’ possession of the Queen Air N-814B.-
“9. That Michigan National had complete knowledge of the sale to Maierhof-fer, and acquiesced in the sale to, and possession of Maierhoffer, and directly collected the last four payments of said sale pursuant to John Wards agreement with Maierhoffer.
“10. That Michigan National admits, and the court finds, the note and debt of Nor-Roz, August 8,1974, was paid in full.
“11. That the chattle (sic) mortgage securing that debt, Document No. N90760, was released by John Ward, vice president of Michigan National. The release was filed with the FAA as Document No. P14904.
“12. That the attempt of Nor-Roz, and Michigan National to sell the plane to American Aviation Corporation (‘American Aviation’), and to create a new security interest in Michigan National, on June 30, 1975, five months after the sale to Maierhoffer, is null and void.
“13. That the parties stipulated, and the court finds, that at the time of the replevin, Enrique Nouchet had a valid mechanics lien on the aircraft, and that Enrique Nouchet, shall receive $750.00, from Henry Maierhoffer.
“14. That the Michigan National took the plane from the possession of Enrique Nouchet.
“15. That at the time of the replevin, except for the lien of Enrique Nouchet, Henry Maierhoffer had the unencumbered right, title and interest, to the 1972 Queen Air N-814B.
“16. That Michigan National had no right to possession of N-814B, at the time of the replevin.
“17. That the Defendant, H. Lehman, is to be dismissed with prejudice.
“18. That the Defendant, International Flight Center, is to be dismissed with prejudice.
“19. A default has been entered against the Defendants, American Aviation, R. Negron, Jr., and Nor-Roz.
“20. That by agreement between Michigan National, and Maierhoffer, the Michigan Bank has sold the aircraft and hold the proceeds of the sale.
“21. Michigan National alleged, John Ward testified, and the court finds that the aircraft, including the log books, had a value of $60,000.00 at the time of the replevin.
“22. That the log books were in the plane when the Michigan National Bank of Detroit caused the plane to be taken from Enrique Nouchet.
“23. That the Fidelity and Deposit Company of Maryland, is surety for the Michigan National Bank of Detroit, under its replevin bond filed with court on August 26, 1976.”
*321 The Bank’s first point claims that the Bank’s security interest in the aircraft was superior to Maierhoffer’s claimed ownership. The record shows that on May 17, 1974, Nor-Roz, Inc., an aircraft dealership, purchased the subject aircraft for its inventory, On August 8,1974, Nor-Roz obtained financing for the aircraft from the Bank by giving a promissory note of $78,697.80, payable in 20 installments. The note was secured by an aircraft chattel mortgage, which was recorded with the Federal Aviation Administration on August 29, 1974.
On January 25, 1975, Nor-Roz sold the aircraft to Maierhoffer for $58,000.00. The Bank argues that this sale should not be considered as one in the regular course of business because Maierhoffer knew of the Bank’s security interest, paid only a partial payment of the purchase price and agreed to installment payments of the balance, and was given a bill of sale which he agreed with Nor-Roz not to record until a year and a half later when the full purchase price had been paid. We mention this controversy because of the Bank’s emphasis on it, but we do not find that a holding that Maier-hoffer was a purchaser in due course is essential to the court’s judgment.
On February 12, 1975, Maierhoffer informed the Bank that he had purchased the aircraft and sent it a copy of the bill of sale. There is evidence that Maierhoffer also told the Bank of his $29,000.00 down payment and requested notification of any default by Nor-Roz upon its obligation to the Bank upon the aircraft.
Evidently Nor-Roz did not keep up with its obligations to the Bank because in April of 1975, a bank officer came to Florida to check on the Nor-Roz operation. The officer also contacted Maierhoffer and had several conversations with him. There is no doubt that the Bank knew where its floor-planned aircraft was and that Maierhoffer claimed title to the aircraft.
Later, at the request of the Bank, Maier-hoffer made his payments directly to the Bank. Maierhoffer’s testimony was that the bank officer who came to Florida promised him that if he sent the remaining four payments to the Bank, then the Bank would see that he got his title free and clear.
After Maierhoffer made his final payment, he attempted to record his bill of sale with the Federal Aviation Authority. The Authority informed him that title to the aircraft was in American Aviation Corporation. This corporation was a new entity under which the principals of Nor-Roz were doing business. Later, with the cooperation of the Bank, a bill of sale from American Aviation to Nor-Roz was recorded. Thereafter, Maierhoffer’s bill of sale was recorded. Shortly thereafter, the Bank executed a release of its chattel mortgage.
The Bank argues that the evidence shows that the release form which it filed with the Federal Aviation Authority in July of 1976 was inadvertently filed as a part of the Bank’s “restructuring” of its loan to Nor-Roz, then doing business as American Aviation. In substantiating its position, the Bank filed with the Federal Aviation Authority an affidavit revoking its release and seeking to reinstate the lien.
Based upon this record, the trial judge could have found for the Bank, but he did not. He found that the Bank had not dealt fairly with Maierhoffer, and that because of the promises and representations made to Maierhoffer, the Bank could not in equity and good conscience assume a new position by claiming the right of possession and re-plevying the aircraft. There is sufficient evidence in this record legally to support the trial court’s decision. See Rousselle v. B & H Construction Co., Inc., 358 So.2d 614 (Fla. 1st DCA 1978); and Department of Transportation v. Morehouse, 350 So.2d 529 (Fla. 3d DCA 1977).
The Bank’s reliance upon O’Neill v. Barnett Bank of Jacksonville, 360 So.2d 150 (Fla. 1st DCA 1978), is, we think, misplaced. The holding in that case must be confined to the factual situation presented there, where both the trial and appellate courts found that the purchaser was not proceeding in good faith. Here the trial court found that the Bank had misled the purchaser and that the Bank’s attempt to reestablish its security interest was fraudulent. *322 Cf. Texas National Bank of Houston v. Aufderheide, 235 F.Supp. 599, 603 (E.D.Ark. 1964), and the general propositions cited therein from Corpus Juris Secundum and American Jurisprudence 2d.
We have examined the record concerning the propriety of the damages awarded and find no error. Accordingly, the judgment is affirmed upon the appeal of the Michigan National Bank of Detroit.
Maierhoffer, on his cross-appeal, urges that the trial court erred in denying him an attorneys fee based upon Section 78.20, Florida Statutes (1977). The trial judge denied an attorneys fee to the successful defendant without setting forth any reason for the denial. The statute provides:
“78.20 Judgment for defendant when goods retained by, or redelivered to, him. —When property has been retained by, or redelivered to, defendant on his forthcoming bond or upon the dissolution of a. prejudgment writ and defendant prevails, he shall have judgment against plaintiff for his damages for the taking, if any, of the property, attorney fees, and costs. The remedies provided in this section and s. 78.21 shall not preclude any other remedies available under the laws of this state.”
The question to be decided is whether, under the facts of this case, property was in effect redelivered to the defendant when it was sold by agreement. The award of attorneys fees is in derogation of the common law and acts for that purpose should be construed strictly. In Great American Indemnity Company v. Williams, 85 So.2d 619 (Fla.1956), the Florida Supreme Court stated:
“ * * * We are not unmindful of the rule that the award of attorneys fees is in derogation of common law and that acts for that purpose should be construed strictly."
The trial judge correctly determined that the statute did not cover the situation presented.
The cross-appellant’s alternate contention that he was entitled to an attorneys fee under Section 57.105, Florida Statutes (Supp.1978) is not tenable on this record. Accordingly, the judgment is affirmed upon the cross-appeal.
Affirmed.