439 So.2d 1019 (1983)
RECON PAVING, INC. and General Accident Group, Appellants,
v.
Ralph D. COOK, Appellee.
No. AQ-239.
District Court of Appeal of Florida, First District.
October 31, 1983.
*1020 Frank J. Santry of Field, Granger, Santry & Mitchell, P.A., Tallahassee, for appellants.
P. Kevin Davey of Douglass, Davey, Cooper & Coppins, Tallahassee, for appellee.
ROBERT P. SMITH, Jr., Judge.
The principal contention on this appeal by the employer and carrier is that chapter 82-237, Laws of Fla., section 440.15(3)(a)1, Fla. Stat. (1982 Supp.), unconstitutionally impairs the obligation of a contract setting claimant's compensation by statutes in effect when claimant was injured in 1981. Art. I, sec. 10, Fla. Const. That is so, appellants urge, because the act retroactively increased the permanent impairment dollars payable to claimant on account of his prior injury. Appellee Cook, the claimant, defends the act as both retroactive and constitutional. Reserving the constitutional question for our consideration, the deputy applied the 1982 act retroactively to increase claimant's permanent impairment benefits from $1,500, awardable under the statute at the time of Cook's injury, to $12,500, as fixed according to chapter 82-237.
The arguments proceed upon an erroneous premise. The 1982 increase in permanent impairment benefits for injuries of this type was not retroactive to 1979 as assumed, but was prospective only, applying only to injuries occurring after the effective date of the act, May 1, 1982. We therefore do not reach the constitutional questions premised upon the assumed retroactivity of the act.
Cook lost virtually all vision in his left eye in January 1981, when it was pierced by a broken chisel fragment. Appropriate medical testimony and the deputy's findings, employing the AMA Guides to Evaluation of Permanent Impairment, translated Cook's impairment as a 32 percent loss of total vision and a 30 percent impairment of the body as a whole.
The statute in effect when Cook was injured provided that for "loss of 80 percent or more of vision, after correction," a claimant should receive, in addition to benefits for temporary disability and any wage-loss, secs. 440.15(2), (3)(b), Fla. Stat. (1981), permanent impairment benefits of $50 for each percent of bodily impairment through 50 percent and $100 for each percent of bodily impairment above 50 percent. Sec. 440.15(3)(a)1. That subsection also grants the same benefits to those suffering permanent impairment due to amputation or serious facial or head disfigurement not compensable as a permanent total disability. Thus, if Cook's 98 percent loss of vision in one eye constituted "loss of 80 percent or more of vision"  which this carrier has never contested, having voluntarily paid Cook some benefits under this section  Cook's benefits for the resulting 30 percent bodily impairment would be $1,500 under the 1981 statute. The 1982 amendment raised the benefits to $250 for each percentile of impairment up to ten and $500 for each percentile above.
Claimant reads the text and legislative history of chapter 82-237 against a background of assumed legislative concern over litigation then pending in this court affecting the constitutionality of section 440.15(3)(a)1 as enacted in 1979. Our decision in Mahoney v. Sears, Roebuck & Co., 419 So.2d 754 (Fla. 1st DCA 1982), pet. for review granted, Fla. Supreme Court Case No. 62,721, upheld that statute against a claim that its permanent impairment benefits, considered independently of wage-loss and other chapter 440 benefits, are so penurious as to be no adequate substitute for the common law remedies displaced by the act.
Under its title the 1982 act begins with two "whereas" clauses in which the parties and the deputy find a retroactive purpose. Nothing in the body of the act suggests *1021 retroactivity, and as will be seen some things suggest the contrary. The "whereas" clauses are:
WHEREAS, the right to impairment benefits for loss of vision has been disputed since the enactment of s. 440.15(3)(a)1. in 1979, it is the intent of the Legislature to clarify that the intent of the existing language is to provide permanent impairment benefits for loss of 80 percent or more of vision of either eye, after correction, and,
WHEREAS, this is not intended to be a substantive change, any employee injured in an accident which occurred on or after August 1, 1979, resulting in loss of 80 percent or more of vision of either eye, after correction, is entitled to permanent impairment benefits, NOW, THEREFORE,
Be It Enacted by the Legislature of the State of Florida:
Claimant's premise of retroactivity, which appellants accept as introducing their constitutional arguments, must be elaborated as follows. The referenced "dispute" over impairment benefits for loss of vision was the constitutional dispute over the alleged penury of impairment benefits specially provided for such vision loss, amputation, or disfiguring face or head injury. The legislature, wishing to remedy that alleged penury and allay that constitutional question, determined to raise the benefits retroactively for eye-loss claimants injured since August 1, 1979, as well as prospectively. The legislature, either because it was mistaken or because it hoped to avoid constitutional arguments of the sort made here, erroneously declared that "this is not intended to be a substantive change." While at that work, the legislature also clarified the existing purpose and effect of "loss of 80 percent or more of vision, after correction," meaning that loss in either eye.
If a retroactive purpose could otherwise be found in the 1982 act, we might regard the legislature's declaration, "this is not intended to be a substantive change," as benighted but benign: ineffective, because erroneous, to evade the constitutional questions that retroactive substantive legislation may encounter, but evidence nevertheless that retroactivity was purposed. By any standard, increasing or decreasing the dollar benefits payable for an industrial injury is substantive legislation. E.g., City of Lakeland v. Catinella, 129 So.2d 133 (Fla. 1961); Hecht v. Parkinson, 70 So.2d 505 (Fla. 1954).
Except in this rather convoluted interpretation of the "not substantive" declaration, there is no evidence of retroactivity in the 1982 legislation. The "not substantive" declaration may therefore be taken at its word, applicable only to provisions in the act that are indeed not substantive but only declaratory of what the legislature conceived was existing law. Because the language may be so taken, it must be.
"In the absence of clear legislative intent to make them retroactive, substantive statutes are prospective only." That was only recently reaffirmed by the Supreme Court. VanBibber v. Hartford Accident & Indemnity Ins. Co., 439 So.2d 880, 883 (Fla. 1983), citing Seddon v. Harpster, 403 So.2d 409 (Fla. 1981). We therefore require "clear legislative intent" of a retroactive purpose.
The "whereases" themselves, we think quite obviously, may be construed as referring to a "dispute" over whether existing 440.15(3)(a)1 requires, for permanent eye-loss impairment benefits, "loss of 80 percent or more of vision" in one eye or both eyes; and as expressing as the purpose already in place, not a "substantive change," that of paying for such a loss in one eye.
If in spite of this forthright possibility a retroactive purpose is to be attributed to the "whereas" clauses introducing the enacting clause, it is incongruous that the body of the legislation, by section 5 to "take effect upon becoming law," contains no simple sentence saying that the benefits payable for certain impairments shall be increased retroactively to August 1, 1979. It is incongruous, too, that the houses of the legislature should have combined in one bill, one act, substantive changes some of which *1022 were to be retroactive, as imported to the "whereases," and some of which were to be prospective only, because not mentioned in the "whereases". Section 1 of the act inserts "in either eye" and increases the benefits payable for the three special classes of injury. Section 2 increases funeral expenses and other compensation for death, amending 440.16(1). Section 3 repeals 440.16(6), Fla. Stat. (1981), which differentiated hernias from other impairments, allowed six weeks' compensation after required surgery, and set up other special provisions for those injuries. Section 4 added to 440.14 a subsection (3), which in calculating average weekly wages credits an employer who provides housing and other considerations during disability.
While we would not dare say it is impossible that the legislature would by "whereases" signal retroactivity, not otherwise expressed, for part but not all of an act containing diverse substantive legislation on the same subject, benefits for injury, we think it unlikely.
It is unlikely, too, that a matter as potentially significant as retroactive increases in benefits should have been added, as the "whereases" were, on the floor of the House, without recommendation by any committee of reference, according to the journals and debate transcript provided us by claimant. Unlikely, too, that retroactivity should have been approved by the House without a word of explanation or debate, and that the Senate, whose bill was the vehicle for that amendment in the House, should have concurred unanimously and without debate.
The "whereases" refer only to eye injuries, but if the "whereases" retroactively increase the benefits awardable by section 440.15(3)(a)1 for eye injuries, the new text must also be read as retroactively increasing the benefits awardable for amputations and head or face disfigurement. There is no shred of evidence that retroactivity was intended for all those injuries, across the board, and no way to read in the text of amended (a)1 a differentiation of eye injury benefits from the others.
Without laboring the matter further, we find no "clear evidence" of purposeful retroactivity in the benefits here in issue.
The parties are correct in their assumption that Cook's loss of 98 percent of vision in one eye qualifies under the 1981 statute for permanent impairment benefits: the required liberal interpretation of "loss of 80 percent or more of vision," together with the 1982 expression of legislative intent, assure that result. See Great American Indemnity Co. v. Williams, 85 So.2d 619 (Fla. 1956); Naranja Rock Co. v. Dawal Farms, 74 So.2d 282 (Fla. 1954); Dolphin Tire Co. v. Ellison, 402 So.2d 36 (Fla. 1st DCA 1981).
The employer and carrier also complain of the deputy's award of wage-loss benefits, because Cook's work search did not continue beyond the date of his maximum medical improvement, as assigned by his physician. Exxon Company USA v. Alexis, 370 So.2d 1128 (Fla. 1978); Regency Inn v. Johnson, 422 So.2d 870, 877 (Fla. 1st DCA 1982). This contention is not without some merit, see Sambo's v. Scott, 417 So.2d 759 (Fla. 1st DCA 1982), but under all the circumstances we find no error. Cook has sustained an obviously severe impairment, rated at 30 percent of the body; he made a significant search for work near the end of his rehabilitative period, which ended with the removal of sutures in a medical effort to make his contact lens more comfortable; his disability thereafter made him unable to drive himself on a work search contrast Sambo's; he undertook self-employment efforts after MMI; and through it all he received no significant assistance from the employer and carrier, who also offered no evidence of available work within Cook's capacities.
The deputy erred in declaring an attorney's fee due Cook, based on a partial controversion of certain claimed benefits. There is no finding of bad faith and the carrier did not contest compensability. Secs. 440.34(3)(b) & (c).
The award of permanent impairment benefits exceeding those allowable under *1023 section 440.15(3)(a)1, Fla. Stat. (1981), and the fee award are REVERSED. The award of wage loss benefits is AFFIRMED.
WIGGINTON, J., concurs.
BOOTH, J., dissents, with opinion.
BOOTH, Judge, dissenting:
I respectfully dissent and would hold the 1982 legislation, Chapter 82-237, Florida Statutes, valid and retroactive in view of its remedial purpose to correct what was plainly an inadequate remedy under the 1979 legislation. Mahoney v. Sears, Roebuck & Company, 419 So.2d 754, 756 (Fla. 1st DCA 1982) (dissenting opinion). The majority fails to recognize the invalidity of the 1979 Act, perpetuating the error of Mahoney, supra, and thereby rendering ineffective the Legislature's belated attempt to correct a grievous wrong.[1]
The order below should be affirmed in its entirety.
NOTES
[1] Retroactivity of the 1982 statute was not made an issue in the Mahoney case, supra, by either party. Claimant in that case did not seek the increased benefits purportedly afforded by the 1982 statute, opting instead to challenge the constitutionality of the 1979 statute in effect at the time of this accident.