PAUL ZEE, individually and PAUL ZEE, doing business as PAUL'S TIRE SHOP, v. MARY SUSAN GARY, widow of JAMES A. GARY, deceased.

189 So. 34
Division A.
Opinion Filed May 19, 1939.

742

*McKay, Dixon & DeJarnette,* for Appellant;
*Ross Williams,* for Appellee.

PER CURIAM.—On appeal from an award by Florida Industrial Commission under the provisions of Chapter 17481, Acts of 1935, the Circuit Court affirmed the award and this appeal was prosecuted.

The findings and award of the Commission were as follows:

"Hearings were held in the above styled claim in the office of the Deputy Commissioner, 829 Ingraham Building, Miami, Florida, on November 3 and 18, 1936, and the following facts were determined:

"James A. Gary, deceased, was in the employ of Paul's Tire Shop on October 1, 1936, as a painter, and on the aforesaid date he was working on a swinging scaffold on the side of the building that houses said Paul's Tire Shop, filling in the cracks of the building with cement, and during the course of the day he took an undetermined number of drinks from a bottle that the defendants alleged to be whiskey.

"At approximately three o'clock in the afternoon on the aforesaid date, while engaged in the aforesaid duties, the very nature of which required him to change his position often, after changing the position of said scaffold, he jumped up and down on the scaffold to see if it was properly secured. After resuming his duties in a stooping position, he arose and took several steps on the scaffold and

in doing so came into contact with the guard rail, the same breaking and causing him to fall to the ground, a distance of about sixteen feet.

"Mr. Gary was taken to the Victoria Hospital in a semi-coma, and upon examination by Dr. Arthur Weiland, it was found he had·suffered several broken ribs, his shoulder blade had a severe compression, and a fracture of the mid dorsal region of the spine. The physician's conclusion based upon clinical manifestations, was that he had a collection of blood in the media stinum, and death resulted October 2, 1936, from this massive collection of blood with pressure on the lungs and heart.

"The employers, by and through their insurance carriers, the Great American Indemnity Company, denied liability and refused to pay Mary Susan Gary, widow of the deceased employee and sole dependent, on the ground that the death of James A. Gary was caused by his intoxicated condition, and the widow, through her attorney, Ross Williams, asked for a hearing to determine the merits of the case.

"The only question submitted to the Commission for a decision in this case is as follows:

"'Where an employee while in the course of his employment, falls from a swinging scaffold by reason of the breaking of a guard rail with which he inadvertantly came into contact, and dies as the result of the fall, and even though the deceased employee had been drinking intoxicating liquor during the day on.which he fell, was the accident and death of such employee due primarily to intoxication?'

"The answer to this question is in the negative.

"The law which the defendants are relying on to defend this claim is found in Section 9, Article (c), Chapter 17481, Acts of 1935, which provides:

"Section 9 Article (c) 'No compensation shall be payable if the injury was occasioned primarily by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another, or by refusal to use a safety appliance or perform a duty required by statute and/or by any rule or regulation of the employer approved by the Industrial Commission and brought prior to the accident to the knowledge of the employee.'

In determining the liability in this case, it is necessary to construe Section 9, Article (c) and ascertain the intent of the Legislature.

"In so far as the terms of the law are ambiguous, there is no room for construction. But in a long and involved Act, such as the compensation laws, drafted by a legislative process not always conducive to clearness and logic, and expressed in a language not ideally adopted to mathematical clarity of expression, there arise numerous points of doubt.

"There are several rules of construction which the courts must use in the interpretation of words and phrases in ascertaining the legislative intent. Among others, they must be read in the light of their context; not of a single Section, but of the whole Act, it may be taken as the legislative intent that the Act be given effect, if possible, as a consistent and harmonious whole, and only from the whole can the legislative intent be gained. See Oriental Laundry Co. v. Ind. Co., 127 N. E. 676 (Ill.); in re Cannon, 117 N. E. 658 (Ind.); Wick v. Gunn, 169 Pac. 1087 (Okla.); Lahoma Oil Co. v. State Ind. Co., 175 Pac. 836 (Okla.); Consumers Gas and Fuel Co. v. Erwin, 243 S. W. 500 (Tex.); Aetna Life Ins. Co. v. Ind. Co. 252 Pac. 567 (Utah); Smith & McDonald v. State Ind. Co. 271 Pac. 142 (Okla.); Betz v. Columbia Tel. Co., 24 S. W. 2nd 224 (Mo.); Workmen's Comp. Exch. v. Chicago etc. R. R. Co.,

45 Fed. 2nd 585 (Idaho); 'Lumberman's Recip. Ass'n. v. Day, 17 S. W. 2nd 1043 (Tex.); Petroleum Co. v. Beale, 13 S. W. 2nd 364 (Tex).

"The Section 9 Article (c) in question, provides that no compensation shall be payable if the injury was occasioned primarily by the intoxication of the employee. This section is part of an involved Act, if considered alone might give rise to a question as to what the legislature meant when they used the words 'primarily by the intoxication.'

"There are several definitions for the word 'Primarily'. The new Century Dictionary defines the term as follows: 'In the primary or first instance; at first; originally; also, in the first place; chiefly; Principally.'

"Corpus Juris defines 'primarily' as follows: 'In the first or most important place; originally; in the first intention.' 49 C. J. P. 1347.

"When analyzed, these two definitions are practically anonymous in meaning. The term 'intoxication' is defined in 'Words and Phrases', 2nd series, Volume 2, 1175, as follows: 'The words "intoxicated" and "drink" means under the influence of intoxicating liquor to such an extent as to lose the normal control to one's bodily and mental faculties and, commonly, to evince a disposition to violence. Hughes v. State, ex rel Sutton, 98 N. E. 839, 841, 50 Ind. App. 617.'

"The intention of the Legislature with reference to intoxication is further indicated in Section 26, Article (c) where there is created, in the absence of substantial evidence to the contrary, a presumption 'that the injury was not occasioned primarily by the intoxication of the injured employee.

"So when the Act is read and considered as a whole, it is clear that for intoxication to bar recovery, it must be the proximate cause of the injury without which the accident would not have occurred.

"There is some evidence in this case to show that James A. Gary was drinking intoxicating liquor while engaged in his duties, but it is not established by a preponderance of the evidence, which is necessary in a special defense of this nature. See Evans v. Louisiana Gas and Fuel Co., 140 So. 245.

"The evidence in this case discloses considerable discrepancy as to whether or not the odor of whiskey could be detected on James A. Gary after he was injured. Witnesses called by the claimant, Robert Noe and Joseph Knaugh, ambulance drivers who carried Mr. Gary from the scene of the accident to the hospital, and Ila Shikany and Julia Locke, nurses at the hospital, testified that they could not smell the odor of whiskey.

"Dr. Arthur H. Weiland, called by the defense, testified that he could smell the odor of whiskey on Gary. But while Dr. Arthur H. Weiland is an eminent physician, his testimony does not necessarily carry any greater probative force than the other individual witnesses in this case, because like the other witnesses, he was only using his sense of smell, and as Gary was unconscious at the time of his examination, he was unable to observe him from a mental standpoint. Burnell Russell (colored) and Paul Russell, witnesses called by the defense, who were working with Gary on the day of the accident, testified that they saw Gary take several drinks from a bottle, and Paul Russell said he smelled liquor on Gary, while Burnell Russell testified that he could not detect any odor of whiskey.

"While there is some question as to whether Gary was under the influence of intoxicating liquor, it must be remembered that he was still able to, and was performing his duties, and as such, was in the course of his employment.

"If the deceased had been in such a state of intoxication as to incapacitate him from performance of his work, the

injury and death might probably be said to arise out of his condition rather than his employment.

"Whenever an employee is so drunk and helpless that he can no longer follow his employment, he cannot be said to be engaged in his employment, and when injured while in that condition his injury does not arise out of his employment. See Alexander v. Industrial Bd., 117 N. E. 1040; Hahnemann Hospital v. Indus. Bd. of Ill., 282 Ill. 316; Hartford Indem. Co. v. Durham, Tex. Civ. App.—(1920), 22 S. W. 275.

"W. R. Carter, an eye witness called by the defendant, testified that about three o'clock in the afternoon he came out of Paul's Tire Shop and went around the building to see how the men were getting along with their work; that Gary was on the parapet of the balcony and was calling down to the colored laborer and asked that the scaffolding be drawn up to him; and that he (the witness) and the colored boy drew the scaffold up to Gary; and that after tying off both ends, Gary resumed his duties in a stooping position; that he arose and took several steps and it looked as if he staggered against the rail; that Gary's body was balanced backwards over the rail when said rail broke, causing him to fall to the ground.

"T. W. Davenport, witness called by the claimant, testified that he had been in the plastering business, which includes the caulking of a building and the use of a swinging ladder, for thirty years, and testified that there was knot in the guard rail, and that said guard rail was broken at the edge of the knot.

"The guard rail should have been strong enough to carry the weight of the deceased employee, James A. Gary, whether he was under the influence of intoxicating liquor or entirely sober, and if the guard rail was not strong enough to carry the weight of James A. Gary if he was

intoxicated, it necessarily follows that it would not have been strong enough if he had been entirely sober and there is no evidence to show that the injury would have happened had it not been for the breaking of the guard rail.

"There are several definitions for the term 'proximate cause'. It is defined in 3 Words and Phrases, Second Series, p. 1325, in the following language: " 'The 'proximate cause' of an injury is that cause which immediately precedes and .directly produces the injury, without which the injury would not have occurred." ' Lindall v. Wood, 44 Fed. 855.

"The breaking of the guard rail was the element in this case that set the chain of causation in motion which immediately preceded and directly caused the injury. Thus, the breaking of the rail was the proximate or primary cause, and the intoxication, if any existed, the remote cause.

The commission does not hold that the deceased employee, James A'. Gary, was not intoxicated to some extent at the time of the injury, although proof is not sufficiently strong to justify us in making a ruling to that effect. But whether the deceased was intoxicated or not is immaterial, due to the fact that there is no proof that any intoxicated condition he might have been in was the primary cause of the injury.

Although the drinking of the whiskey and the intoxication, if any, may have been a contributing cause, our statute was not designed to make contributory negligence of the employee, or a defense of that nature, a bar to recovery under the Act, where, as in this case, the injury arose out of and in the course of his employment.

THEREFORE, for the reasons assigned, it is the award of the Florida Industrial Commission that the employers pay to Mary Susan Gary the sum of Thirteen Dollars and Forty-eight cents ($13.48) a week for three hundred and fifty weeks, or for a total amount of Four Thousand Seven

Hundred and Eighteen Dollars ($4,718.00), unless otherwise concluded in accordance with the provisions of the Act.

It is further the order of the Commission that Philbrick's Funeral Home be paid One Hundred Fifty Dollars ($150.00) for burial expenses, and that the medical bills be discharged as follows: Dr. Arthur H. Weiland, $50.00; Victoria Hospital, $69.00.

It is the further order of the Commission that Ross Williams, the attorney for the widow, Mary Susan Gary, be paid Two Hundred Fifty Dollars ($250.00) for services rendered in this case, and the same is a lien upon the compensation.

Signed this 9th day of January, A. D. 1937.

WENDELL C. HEATON,

Wendell C. Heaton, Chairman,
Florida Industrial Commission."

(F. I. C.)

The decree of affirmance by the Circuit Court was as follows:

"The above styled cause comes on before this Court to be heard upon an appeal from the award of the Florida Industrial Commission, and the Court being fully advised in the premises;

"IT IS THEREUPON CONSIDERED, ORDERED AND ADJUDGED that said findings and judgment of the Industrial Commission be and the same are hereby affirmed except that the attorney's fees awarded Ross Williams as attorney for Mary Susan Gary shall be increased by the sum of $250.00 so as to make same a total of $500.00, said increase being allowed by reason of his additional services rendered by reason of the appeal of said cause to this Court.

"DONE AND ORDERED at Miami, Florida, this 9th day of July, A. D. 1937."

Section 9, Article (c) of Chapter 17481, *supra,* is quoted in the findings of the Commission, *supra.*

The question posed by the appellant for our determination is, as follows:

"Where an employee had been drinking intoxicating liquor throughout a good portion of the day and about the middle of the afternoon exhibited signs of intoxication, staggered, talked 'in a foolish manner,' and otherwise acted so as to show outward evidence of drunkenness, and where the evidence shows that while in such an intoxicated condition he attempted to rise from a stooping position and fell against a guard rail in such a position that it looked as though he would flip over the top of the rail and where the rail broke, can it be said that he is entitled to compensation under the Florida Workmen's Compensation Act, which Act bars a recovery when an employee receives an injury 'occasioned primarily by the intoxication of the employee?' "

The question necessarily assumed that the deceased was intoxicated at the time of the injury and that such intoxication was the primary cause of the injury resulting in death. These assumptions are not warranted by the record and findings of the Commission. There was substantial evidence from which the Commission may have drawn the conclusion that the defendants had failed to meet the burden of proving the defense interposed under the provisions of Section 9, Article (c) of Chapter 17481, *supra.*

No reversible error is made to appear and the order appealed from is affirmed.

So ordered.

TERRELL, C. J., and BUFORD, J., concur.

THOMAS, J., agrees to conclusion.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.