In the Matter of the Claim of MILDRED CARPENTER, Appellant, v. CERAMIC SYSTEMS, INC., et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, May 9, 1974.

Freedman, Wray, Wagner & Tabakman (David MacRae Wagner of counsel), for appellant.

Morgan F. Bisselle (John P. Sullivan, William Evans, III, Thomas Bonaros and James W. Smith of counsel), for Ceramic Systems, Inc., and another, respondents.

Louis J. Lefkowitz, Attorney-General (Daniel Polansky of counsel), for Workmen's Compensation Board, respondent.

REYNOLDS, J. This is an appeal from a decision of the Workmen's Compensation Board, filed May 25, 1971, which disallowed claimant's claim for death benefits.

On December 24, 1968 the decedent attended a Christmas party on the employer's premises at which alcoholic beverages and food were provided by the employer and consumed by those in attendance. How much alcohol decedent actually consumed is unknown but the evidence shows he was drinking very heavily and became very belligerent and obnoxious during the course of the party. One witness testified that the decedent was drinking "more heavily than anybody else at the party" and that his language became "progressively more abusive". A second witness testified that the decedent was drinking paper cups full of alcohol with just "a little soda in it". Still a third witness testified that he was "apparently intoxicated. He was unsteady on his feet. He was belligerent." Moreover, at sometime between 2:00 P.M. and 2:15 P.M. the decedent assertedly slumped to the floor unable to walk in a drunken stupor. At about 2:30 P.M. before the final employees left the party two coemployees, after trying to wake him up, put his thermo coat on him and brought the decedent to the front steps leading to the employer's building. Upon leaving about 3:00 P.M. his coemployees tried again to wake him but, cussing and swearing, he refused their

aid and indicated he would walk home. Nevertheless, before finally leaving him one of the coemployees told the decedent he would take him home but the decedent refused the offer and stated he would be all right. Unable to find out where he lived the coemployee left the decedent at 3:00 P.M. seated on the front steps where his body was found the next morning. The causes of death were given as asphyxiation, exposure and gastroenteritis.

The majority of the board found that based on the credible evidence in the record the decedent did not sustain an accident arising out of employment but died from a personal activity and, accordingly, disallowed the claim. It has long been established that in a given case such as this accident the employer's responsibility is a question for the board assuming that there is substantial evidence to support its decision. This is not a section 10 case but a case where the board could find as they did that the death of decedent resulted from a personal activity which was not incidental to his employment. They could also find as they did that the asphyxiation was due to the ingestion of alcohol and intoxication (see report of Dr. Reuben Lapidus). As we said in *Matter of Giocastro* v. *New York City Tr. Auth.* (24 A D 2d 679), " ' It was within the province of the board to either accept or reject claimant's testimony or any evidence in support thereof.' (*Matter of Kruk* v. *Forest Hills Hosp.*, 14 A D 2d 952, 953.) The credibility of witnesses is within the fact-finding power of the board and we may not disturb its determinations on questions of fact and credibility (*Matter of Manolakis* v. *Edison S. S. Corp.*, 15 A D 2d 845; *Matter of Rothschild* v. *Flatbush Jewish Center*, 18 A D 2d 1045)." (See *Matter of Majune* v. *Good Humor Corp.*, 26 A D 2d 849.)

Accordingly, the board's decision is supported by substantial evidence and must, therefore, be affirmed.

The decision should be affirmed, without costs.

GREENBLOTT, J. P. (dissenting). We dissent. A majority of the board found that death resulted from a personal activity and was not incidental to decedent's employment. There is no question that the Christmas party on the employer's premises at which the employer supplied the intoxicants and the food, was connected with the employment.

In order for the board to find that decedent's death was a result of a purely personal act, it must first be able to exclude the hypothesis that the accident arose out of and in the course of the employment. Where an employer sponsors an on-premises social affair during working hours at which employee attendance

is encouraged and expected, injuries suffered at such affairs are generally compensable (see *Matter of Tedesco* v. *General Elec. Co.,* 305 N. Y. 544, 550). If the employer goes further and provides intoxicants, "the case has a large head start toward compensability. * * * The nature of office parties being what it is, the causal contribution of * * * drinking to the injurious episodes has been cited as a special link to the employment". (1 Larson, Workmen's Compensation Law, § 22.23.) In the case at bar, the employer furnished the alcohol and food at the party for the purpose of improving employer-employee relations. In so doing, the employer thus created a situation in which the drinking was clearly employment-related rather than personal, and having created the risk, the employer should be held responsible for the consequences. (See Larson, Intoxication as a Defense in Workmen's Compensation, 59 Cornell L. Rev. 398, 415, where it is suggested that an employer may be estopped to assert a defense based on intoxication where he has helped to cause the episode.)

This is not to say that an employee's mere presence at an office party gives him license to abandon any concern for his personal well-being. Thus, where there is uncontradicted evidence of an employee's expressed intent to drink to a state of unconsciousness, it has been held that such drinking is purely personal (*Matter of Herman* v. *Greenpoint Barrel & Drum Reconditioning Co.,* 9 A D 2d 572). Here, however, the opportunity to drink was created by the employment, and while there is some testimony that decedent drank more liquor than other employees, there is no evidence that his conscious design was to drink to unconsciousness. The unfortunate fact that he may not have been able to hold his liquor as well as other employees, and reacted in an antisocial manner, is insufficient basis for finding that the consumption of liquor supplied by the employer was purely personal.

Furthermore, all of the doctors who testified agreed that decedent's death was not caused solely by intoxication, and that the cause of death was due, at least in part, to exposure to the elements and asphyxiation. The asphyxiation resulted when decedent choked on his own vomitus, caused by gastroenteritis. More significantly, the exposure resulted when decedent's coemployees removed him from the employer's premises and callously left him sitting, in a semistuporous state, on the steps of the employer's premises, in subfreezing weather. Where one of the causes contributing to death was affirmatively activated by acts of coemployees, it cannot be said that decedent's death

resulted from personal acts. Moreover, it would be inconsistent to permit a finding that the decedent was " in a drunken stupor " and thus unable to walk, as noted by the majority, and yet accept the excuse that he had refused aid and indicated he would walk home, which implies sufficient presence of mind to make such a decision.

The decision should be reversed.

KANE and MAIN, JJ., concur with REYNOLDS, J.; GREENBLOTT, J. P., and COOKE, J., dissent and vote to reverse in an opinion by GREENBLOTT, J. P.

Decision affirmed, without costs.