438 So.2d 133 (1983)
WEST FLORIDA DISTRIBUTORS and Federal Insurance Company, Appellants,
v.
Sharon A. LARAMIE, Appellee.
No. AO-107.
District Court of Appeal of Florida, First District.
September 19, 1983.
*134 Bernard J. Zimmerman and Michael M. O'Brien of Akerman, Senterfitt & Eidson, Orlando, for appellants.
W. Dennis Brannon of Dewrell, Blue & Brannon, Fort Walton Beach, for appellee.
JOANOS, Judge.
This is an appeal from a deputy commissioner's order awarding death benefits to the employee's widow despite a claim that the employee was driving while intoxicated when he was killed. We affirm.
The employee, Gilbert Laramie, a liquor salesman for employer, was killed when he was thrown from his automobile. He had been traveling in clear weather at about 10 p.m., and was clocked by Florida Highway Patrol Trooper Gilbert at 80 m.p.h. just before the accident. He was not observed weaving or changing speed erratically. Two of his wheels left the pavement and as the car swerved to get back on the road, he overcorrected and lost control of the car, according to Gilbert. His blood alcohol level was .22%, and there were traces of valium. His widow claimed workers' compensation benefits. Laramie was on the road from having seen a customer to see another when the accident occurred.
Employer supplies wine and liquor to bars and package stores. The testimony of another salesman and representatives of employer was that it was a common practice for the salesmen to have drinks with their customers. There was also testimony by several people who saw Laramie the evening of the accident at up until about 9 p.m., to the effect that he did not appear to be intoxicated, and that he had a high degree of tolerance for alcohol.
Ricky Weeks, a salesman with employer, said employer encouraged them to drink with customers for public relations purposes, but did not encourage them to become intoxicated. He last saw Laramie at 9 p.m. and he did not appear drunk. He had no trouble walking or speaking and Weeks was not concerned for him. David Hogle, employer's wine manager, said drinking with customers enhanced the saleman's relationship with the customer, and employer never put a limit on when to drink with a client. They did not suggest that salesmen drink to intoxication, no policy allowed them to drink to excess, and it was not acceptable to drink to excess. They probably would not fire a salesman who inadvertently became intoxicated, it is one of the hazards of the trade. Curtis Johnson, sales supervisor, said the salesmen have to know their product and it may be to their advantage to drink with customers, but he never told any of his men to get drunk. Kenneth Russell, a bar owner, said there's a difference between a salesman having a drink with a customer and becoming intoxicated. He has not seen any of the salesmen become intoxicated.
A highway patrolman who investigated the accident, Pittman, put in his report that the accident was a direct result of Laramie's intoxication. The pathologist who did the autopsy, Dr. Clemmons, said with .22% blood alcohol, even with a greater than average tolerance, driving ability would be impaired.
Section 440.09(3), Florida Statutes, provides, in part:
No compensation shall be payable if the injury was occasioned primarily by the intoxication of the employee... . If there was at the time of the injury 0.10 percent or more by weight of alcohol in the employee's blood, it shall be presumed, in the absence of substantial evidence to the contrary, that the injury was occasioned primarily by the intoxication of the employee.
The deputy commissioner's findings are summarized as follows. He found there was little evidence, other than Laramie's intoxication, to account for the accident. The highway had been straight and level and no other car was involved. Laramie's *135 car left the road and he overcompensated when returning. The most likely explanation was found to be that his reflexes were dulled due to the amount of alcohol in his blood stream. Laramie's widow failed to overcome the presumption of intoxication of Section 440.09(3) Florida Statutes. The deputy commissioner further found that the claim cannot be barred, however, because the employer is estopped from asserting intoxication defense since the employer encouraged and practically insisted on use of alcohol on the job and that Laramie's supervisors did not respond with unqualified "no" when asked if it was company policy to encourage salesmen to become inebriated during the course of employment. The supervisors at least impliedly recognized that liquor salesmen might occasionally cross the line between slight intoxication and more. They recognized intoxication while on duty as a hazard of the trade. When seen last, Laramie was not obviously drunk. Employer cannot be allowed to encourage a course of conduct, then refuse to face the consequences. The deputy commissioner concluded that an estoppel exception should be recognized. Under § 440.09(4), the benefits were reduced 25% for willful refusal to observe safety rules required by statute. He further found that the law governing excess speed is a safety rule which Laramie violated. The combination of intoxication and excessive speed constitutes willful disregard of a statute, therefore benefits are reduced by 25%.
On appeal the employer and its insurance carrier (E/C) argue that they should not be estopped from asserting the defense of intoxication because the employer encourages salesmen to have a social drink with customers, since the employer does not encourage or condone salesmen becoming intoxicated. E/C further argue that to allow this estoppel would alter employee-employer relationships and obviate the purpose of Section 440.09(3), to discourage employees from drinking on the job. Appellee argues that the employer's express approval and consent to the salesmen drinking with customers made the special hazard of intoxication incidental to the employment, and points out that the employer set no clear parameters to the drinking with customers.
The deputy commissioner's determination that the primary cause of the accident was intoxication is supported by competent substantial evidence. In addition, we approve of the application of estoppel to the intoxication defense in this case.
Appellant relies upon two cases from other jurisdictions in its argument against an estoppel, Hopper v. F.W. Corridori Roofing Co., 305 A.2d 309 (Del. 1973), and Smith v. Traders and General Insurance Co., 258 S.W.2d 436 (Tex.Civ.App. 1953). Hopper is readily distinguishable. In Hopper an 18 year old employee suffocated by regurgitation as a result of intoxication. He had attended an office Christmas party at which he had been cautioned against drinking. While the Industrial Accident Board awarded death benefits, determining the employer was estopped from raising the intoxication defense, having made liquor available to a minor in violation of the law, the Supreme Court of Delaware reversed, holding that the statutory intoxication defense was a clear and unequivocal statement of public policy creating a complete defense for intoxication. As part of its rationale, the court noted it did not appear the employer had served or given liquor to the employee, but had merely made liquor available at a social event attended by adults and a minor. "Nor does it appear that the employer-host knew or should have known of any propensity for such harm as was suffered by the employee in this case by reason of the availability of intoxicating liquor at the social event." Hopper at 311. In reaching this result, the court found support in the Smith case.
In Smith, the Texas court found that intoxication was a complete defense and "[t]he fact that the employer of Smith may have originated and participated in the drinking of intoxicants with Smith has no bearing on the situation." Smith at 438. The Smith case involves a statute described as "draconian" by Larson, in that it denies compensation benefits for intoxication regardless *136 of causation. See Larson Sections 34.32, 34.35 (n. 51.3). Unlike Texas, the Florida statute requires that the intoxication be the primary cause of the injury. That distinction in statutory language may or may not be meaningful in our situation where the evidence supports the deputy commissioner's determination that the intoxication was the primary cause. Nevertheless, we are unpersuaded that the harshness of the Texas attitude should be made applicable to the situation before us.
On the other hand, appellee relies on McCarty v. Workmen's Compensation Appeals Board, 12 Cal.3d 677, 117 Cal. Rptr. 65, 527 P.2d 617 (1974), in which the employer was estopped from asserting a statutory defense to an injury "`caused by the intoxication of the injured employee'" because the employer tolerated or encouraged drinking in the course of the employment. To satisfy the elements of estoppel, quoting an earlier case, Tate v. Industrial Accident Commission, 120 Cal. App.2d 657, 261 P.2d 759 (1953), the McCarty court stated "the employer's tacit approval and consent amount `to an implied representation that the employer will not hold it against the employee if he drinks, and will not deprive him of his job or of compensation benefits if he does so.'" McCarty 261 P.2d at 622.
Given the deputy commissioner's findings of fact in this case, which are supported in the record, we find the rationale of the McCarty case more persuasive as to the situation before us and adopt it. Under the circumstances, the employer impliedly represented that the employee would not be deprived of his job or of compensation if he should become intoxicated. The employer is therefore estopped from raising the intoxication defense.
The factual setting of this case is unique and our opinion should not be construed to provide for an estoppel of the intoxication defense in significantly different circumstances.
In all respects the deputy commissioner's order is AFFIRMED.
LARRY G. SMITH and NIMMONS, JJ., concur.