580 So.2d 832 (1991)
Walter STERLING, Sr., As Guardian of Walter Sterling, Jr., Incompetent, Appellant,
v.
MIKE BROWN, INCORPORATED and Associated Industries of Florida, Property & Casualty Trust, Appellees.
No. 90-1222.
District Court of Appeal of Florida, First District.
May 23, 1991.
Rehearing Denied July 10, 1991.
*833 John N. Buso, John N. Buso, P.A., West Palm Beach, for appellant.
Timothy M. Basquill, Beisler & Beisler, West Palm Beach, for appellees.
ALLEN, Judge.
The appellant challenges a final order of the judge of compensation claims, denying all compensation benefits to the appellant's son, Walter Sterling, Jr., who received serious injuries in a fall on the business premises of his employer, Mike Brown, Inc. The judge found that Sterling's injuries were not compensable under the Workers' Compensation Law for several reasons, any one of which would be sufficient to support a finding of noncompensability. Because we conclude that the judge could properly have found that Sterling's injuries did not arise out of and in the course of his employment, and because we conclude that the judge could properly have found that *834 Sterling's injuries were occasioned primarily by his intoxication, we affirm.
Sterling was employed as an air conditioning mechanic at Mike Brown, Inc., an air conditioning company. In the afternoon hours of Friday, December 23, 1988, Sterling attended a Christmas party held on the business premises and hosted by the owner, Mike Brown, and one of his competitors and friends, John Cryan. Mike Brown provided the ribs and snacks for the party, Cryan provided a keg of beer, and unknown persons provided soft drinks and one bottle of liquor. The party began at approximately 1:00 p.m. and it was attended by employees, bookkeepers, competitors, friends and business acquaintances of the two businesses. Sterling joined the party at about 1:30. At approximately 3:00, Brown determined that Sterling had consumed too much alcohol to safely drive the company truck home, so he and another employee took Sterling's keys from him. By 7:00 in the evening, most of the guests were leaving, and a fellow employee of Sterling's named Doyle Murphy offered to drive Sterling home and back again to work the next day. Sterling became angry and shoved Murphy in the chest a few times, provoking Murphy to hit him once with a closed fist to his face. Sterling fell backwards, hit his head upon the concrete floor and tragically sustained severe and permanent injuries.
Section 440.09(1), Florida Statutes, provides that compensation benefits will be payable "if the [claimant's] disability or death results from an injury arising out of and in the course of employment." In Brockman v. City of Dania, 428 So.2d 745 (Fla. 1st DCA 1983), we adopted a three-pronged test for determining the circumstances under which recreational or social activities come within the course of one's employment. Approving the analysis used by Professor Larson in his workers' compensation treatise, social activities are deemed to be in the course of employment when any one of the following criteria are met: (1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or (2) the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or (3) the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life. Applying this analysis to the facts before her, the judge found that the party did not occur as a regular incident of the employment, that the employer did not expressly or impliedly require his employees' attendance, and that the employer derived no substantial direct benefit from the party. We conclude that these findings are supported by competent substantial evidence presented at the hearing below.
To date, no Florida court has considered the compensability of an employee's injuries at the company Christmas party, and review of the cases referenced in Larson's treatise reveals that courts from other states have reached inconsistent results. See e.g., Torres v. Triangle Handbag Mfg. Co., 13 A.D.2d 559, 211 N.Y.S.2d 992 (N.Y. App. Div. 1961); Carpenter v. Ceramic Systems, Inc., 44 A.D.2d 348, 355 N.Y.S.2d 204 (N.Y. App. Div. 1974); Anderson v. Custom Caterers, Inc., 279 Ala. 360, 185 So.2d 383 (Ala. 1966); and other cases collected in 1A Larson, The Law of Workmen's Compensation § 22.23 (1990). In this case, while there was testimony that Mike Brown had hosted a Christmas party during each of the four to five years that he had been in business, the nature of these previous parties and the scope and extent of Brown's sponsorship of them was not developed in the testimony. There was no testimony from any of the employees that they had come to regard a company Christmas party as a fringe benefit to which they were entitled. Under these circumstances, the judge was not required to find that the party had become "a regular incident of the employment" within the meaning of prong (1) of the Brockman test.
The evidence that Brown expressly or impliedly required his employees' participation, *835 or that he made the party part of the services of his employees is even weaker. Mike Brown unequivocally testified that he did not require his employees' attendance at the party and not one of the several employees who testified before the JCC said that he felt required to attend the party. Indeed, there is no evidence that every employee attended the party. Although the party began during normal working hours, the evidence suggests that Brown closed his shop early that day to host it. The employees were not paid for their attendance at the party, there is no evidence that they would have been required to work in lieu of attending it, and no record of the employees' attendance was kept. Cf. Hutchinson v. Dade County School Bd., 561 So.2d 1291 (Fla. 1st DCA 1990) (where participation at the softball game was voluntary, claimant knew that his job security would not be endangered if he refused to participate, and only a few of the department chairmen participated in the game, prong (2) of the Brockman test was not satisfied). Finally, the appellant's argument that Brown knew his employees would feel compelled to attend the party because they often drank together after working hours does not compel a finding contrary to that reached by the judge of compensation claims.
To satisfy prong (3) of the Brockman test, an employee must show that the employer derived a "substantial direct benefit" from the social activity, beyond the intangible value of improvement in employee morale. There is no direct evidence in the record concerning Brown's motivation for hosting the party, but it may reasonably be inferred that the sole purpose was to improve employee morale. None of Brown's customers were invited or attended, he made no attempt to deduct the costs of the party as business expenses, and he did not use the gathering as an opportunity to make speeches, present awards to his employees, or conduct other business. Compare, American Family Pizza v. Taylor, 573 So.2d 956 (Fla. 1st DCA 1991) (employer benefited from employees' trip to a theme park which was a reward for the employees' participation in a contest designed to promote pizza sales); McCoy Restaurants, Inc. v. Griffith, 569 So.2d 764 (Fla. 1st DCA 1990) (restaurant which hosted a cocktail party as a prize to be given to someone contributing to its Christmas food drive intended to create goodwill in the community, did not benefit from its employee's attendance at the party when the employee was merely a guest of the prize-winner); and Bari Italian Food v. Rittger, 527 So.2d 255 (Fla. 1st DCA 1988) (employer benefited from claimant's participation on softball team because the team advertised the company name on its uniforms, and team members regularly patronized the company's customers after the games, often accompanied by company sales representatives). Upon the evidence presented in the present case, the judge was justified in finding that the employer derived no business benefit from the Christmas party.
Even if the injuries Sterling received at the Christmas party had arisen out of and in the course of his employment at Mike Brown, Inc., he would nevertheless be barred from recovering compensation benefits by virtue of the judge's finding that his injury was occasioned primarily by his intoxication. Section 440.09(3), Florida Statutes. We need not reach Sterling's argument that the evidence was insufficient to trigger the presumption set out in Section 440.09(3) that his injuries were occasioned primarily by his intoxication, because we observe that the judge found that even absent the presumption, Sterling was intoxicated and his injuries were caused by his intoxication. This finding is well-supported by record evidence, particularly the testimony of Clyde Morris who estimated that Sterling drank between thirteen and fifteen eight-ounce cups of beer and an undetermined amount of liquor at the party between the hours of 1:00 and 3:00 or 4:00 p.m. During this period, Sterling ripped the pockets off of his coworkers' shirts, he ripped his own shirt off, and he yelled and became hysterical when his keys were taken from him. Though it appears that later in the evening Sterling stopped drinking, he continued to slur his speech and behave *836 in an emotional manner. The considerable evidence that Sterling was prone to violence when he was intoxicated further supports the finding that he was intoxicated when he picked that fateful fight with Doyle Murphy as the party ended.
We agree with the judge of compensation claims that the employer should not be estopped from asserting the intoxication defense as was the employer in West Florida Distributors v. Laramie, 438 So.2d 133, 136 (Fla. 1st DCA 1983). The Laramie court cautioned against any construction of its opinion which would provide for an estoppel of the intoxication defense in "significantly different circumstances," and in our view, the circumstances presented here are significantly different. Though there was evidence that the employees often drank a few beers on the premises after hours as they tinkered with equipment kept there, and that Brown occasionally joined in and took his turn purchasing the beer, the evidence did not suggest "such specific employer involvement in the drinking practices of the employees as practically to condone their regular practice of becoming inebriated." Avalos v. Williford Farms, Inc., 561 So.2d 1344, 1346 (Fla. 1st DCA 1990).
Finally, we must reject Sterling's argument that he is entitled to recover benefits because his injuries were caused by Murphy's blow to his face and not by his own intoxication. In City of Tampa v. Green, 390 So.2d 1220 (Fla. 1st DCA 1980), and R.P. Hewitt & Assocs. of Florida, Inc. v. Murnighan, 382 So.2d 353 (Fla. 1st DCA 1980), upon which Sterling relies, the judges below found that the claimants' accidents were occasioned primarily by something other than the claimants' intoxication. This court, noting the presence in each case of substantial evidence to support the judges' factual conclusion about causation, determined that there was no error in the judges' conclusion that the claimants' intoxication was not the primary cause of the accidents. In this case, the judge noted the considerable, uncontroverted evidence that Sterling typically became violent and aggressive when he drank. There was no evidence of any hard feelings between Sterling and Murphy which might have precipitated a fight absent Sterling's intoxication, nor was there any evidence that "a completely sober man could have suffered the same accident." On this record, it was reasonable for the judge to conclude that, but for Sterling's intoxicated confrontation with Murphy, the assault would not have taken place. See Avalos v. Williford Farms, Inc., 561 So.2d 1344, 1346 (Fla. 1st DCA 1990) (noting the reasonableness of the judge's conclusion that but for claimant's intoxicated confrontation with his coworker, the assault in which he was injured would not have taken place).
In light of our disposition of the issues presented on appeal, we need not reach the question presented in the cross appeal concerning the admissibility of the blood alcohol test results.
Accordingly, the order under review is affirmed.
WOLF, J., concurs.
ERVIN, J., dissents with written opinion.
ERVIN, Judge, dissenting.
In deciding that the employee's compensation claim was noncompensable, the judge of compensation claims (JCC) reached the following alternative conclusions: 1) that the appellant's injury was not caused by an accident arising out of and in the course of employment; 2) that even if the injury were employment-related, he was barred from receiving compensation due to the provisions of Section 440.09(3), Florida Statutes, in that he willfully intended to injure another person; 3) that, in any event, the claimant's injury was occasioned primarily by his own intoxication, and was therefore noncompensable; and 4) the employer/carrier (E/C) was not estopped from availing itself of the intoxication defense under the facts at bar. I disagree with all the above conclusions and would reverse.
Turning first to the issue of whether claimant's injury arose out of and in the course of employment, the majority recognizes that the question, as applied to injuries *837 suffered by a worker at his employer's Christmas party, is one of first impression in this jurisdiction. The majority nonetheless employs in my judgment not only a restrictive, but incorrect application of the three-part test this court adopted in Brockman v. City of Dania, 428 So.2d 745 (Fla. 1st DCA 1983), for determining whether recreational or social activities come within the course of employment.
I consider that once the Brockman court adopted the test advocated by Professor Larson for deciding whether a particular activity at issue is employment-related, it is our responsibility to apply the test in a manner consistent with the vast majority of jurisdictions that have addressed the question. The JCC's error below and the majority's on review is in their apparent assumption that proof of all three alternative parts of the test must be established. In that the three prongs are joined by the conjunctive "or," adequate proof of any one of the three satisfies the standard. The preferred view in the majority of the cases compiled in Professor Larson's treatise is that if the evidence establishes the employee's injury occurred during an activity on the employer's premises, and if it shows that the activity was a regular and routine incident of employment, sufficient proof has been adduced that the activity was one within the course of employment, and proof of the remaining prongs of the test is not required.
In discussing the compensability of an injury suffered on the employer's premises, Professor Larson observes:
When seeking for a link by which to connect an activity with the employment, one has gone a long way as soon as one had placed the activity physically in contact with the employment environment, and even further when one has associated the time of the activity somehow with the employment. This done, the exact nature and purpose of the activity itself does not have to bear the whole load of establishing work connection, and consequently the employment-connection of that nature and purpose does not have to be as conspicuous as it otherwise might. Conversely, if the recreational activity takes place on some distant vacant lot, several hours after the day's work has ceased, some independently convincing association with the employment must be built up to overcome the initial presumption of disassociation with the employment established by the time and place factors.
Accordingly, it should not be necessary, in the typical case of injury, [for example,] during a noon-hour ball game on the company's ball diamond or its gymnasium to bolster the case by adding proof of employer sponsorship of the activity or employer benefit therefrom. It is generally held sufficient that the activity is an accepted and normal one, since it thereby [becomes] a regular incident and condition of the employment.
1A A. Larson Law of Workmen's Compensation § 22.11, at X-XX-X-XX (1990) (hereafter Larson)
Evidence that an activity was an accepted and normal routine of the employment may be established by a showing that it was "at least long enough for a reasonable employer to become aware of it... . The test is whether the activity has in fact become an incident of the employment[.]" Larson § 22.12, at X-XX-X-XXX. At footnote 19 Professor Larson refers to Case of Moore, 330 Mass. 1, 110 N.E.2d 764 (1953), with the explanation: "Customary nature of activity is one factor to be considered  in this instance, Christmas office party." Id. The employer's testimony at bar clearly established that the Christmas party was an annual affair which he had sponsored for no less than five years. This should constitute adequate proof that it had become at the time of claimant's injury a regular incident and condition of the employment.
The fact that an annual recurring Christmas party was held on the employer's premises in Torres v. Triangle Handbag Manufacturing Co., 13 A.D.2d 559, 211 N.Y.S.2d 992 (App.Div. 1961), is no doubt what motivated the Appellate Division of the New York Supreme Court to hold that claimant's injuries, resulting from a stabbing, occurred in the course of employment, *838 without discussing any of the additional parts of the employment test. In Torres the evidence showed that the employer had given the party each year for a number of years and that drinking and dancing were available for all the employees. The court affirmed the New York Workmen's Compensation Board's order, holding that attendance at the party was a normal incident of the claimant's employment, and therefore the assault suffered by claimant was compensable. Similarly in Beauchesne v. David London & Co., 118 R.I. 651, 375 A.2d 920 (1977), the Rhode Island Supreme Court held that an employee's injuries caused by a fall from the third floor window of the company building during an annual Christmas party were employment-related on facts similar to those at bar, showing that the work-day was concluded early in the afternoon when the party began. In deciding there was a sufficient connection between the employment and the claimant's injuries, the court noted that the party was held in the plant during a period usually reserved for work.[1]
In suggesting that the claimant should present evidence that the employer derived some particular benefit from the party, or that attendance was required, the majority has fallen into the same error as have courts in certain out-of-state cases criticized by Professor Larson, which similarly assumed that other parts of the test are indispensable to a finding that the disputed activity was in the course of employment. In summarizing the holdings in the cases, Larson concludes with the following commentary:
All three cases made the mistake of treating one single test as a sine qua non of work-connection. The better rule, and the rule here favored, is that there are at least the three independent links in the headnote by which recreation can be tied to the employment, and if one is found, the absence of the others is not fatal.
Larson, § 22.11, at 5-98.
To conclude: All that is required under the first prong of Professor Larson's three-pronged test is that in order for the party to become a regular incident of the employment, evidence must be presented that the annual Christmas party had become at the time of the injury a customary practice of the employer and that the employee's injury occurred on the employer's premises. Once such proof has been established, the claimant has met his or her burden, and the remaining two parts of the test are immaterial to a decision regarding whether the particular social or recreational activity came within the course of the claimant's employment. Because the evidence at bar clearly satisfied the first requirement, the JCC erred in holding that the injury did not arise out of and in the course of employment.[2]
Addressing the JCC's next two conclusions in combination,[3] i.e., that the claimant *839 was the aggressor and that his injury was occasioned primarily by his intoxication, hence he was barred from compensation, I think it important to consider first what is required by the statutory phrase, "if the injury was occasioned primarily by the intoxication of the employee." § 440.09(3), Fla. Stat. (1989). The rule is well established that compensation will not be barred if intoxication was only a remote cause of the injury. R.P. Hewitt & Assoc. of Fla., Inc. v. Murnighan, 382 So.2d 353 (Fla. 1st DCA 1980). In the case at bar the immediate cause of the claimant's massive head injuries was the fall upon a cement floor which in turn was caused by a fist-blow to his face from a co-employee. At the time of the injury, as the JCC found, claimant had not consumed any alcoholic beverages for three to four hours. Unquestionably the evidence discloses that claimant's excessive consumption of alcohol contributed to his injuries, but in my judgment it does not show that this was the primary or, as construed by Florida courts, the proximate cause of his injuries.
Accordingly, in situations in which evidence is presented revealing both that an employee was intoxicated at the time of injury and that his injury immediately followed the willful act of another employee, in order to determine the legal cause of the employee's injuries, pertinent case law requires that the trier of fact focus his or her attention upon the claimant's conduct prior to the occurrence of the injury. Under the circumstances presented, we cannot isolate the fact of claimant's intoxication from either his or his co-employee's conduct which precipitated the injury.
The critical statutory language creating the intoxication defense was written in Florida's original Workers' Compensation Act at Section 9, Article (c), chapter 17481, Acts of 1935. In construing this language, the Florida Supreme Court in Zee v. Gary, 137 Fla. 741, 744-46, 189 So. 34, 36 (1939), observed that the statutory term "primarily" meant that in order "for intoxication to bar recovery, it must be the proximate cause of the injury without which the accident would not have occurred." Id. at 746, 189 So. at 37. Thus the Supreme Court has equated primary cause of the injury with proximate cause. Proximate causation has, in other contexts, been defined as a cause which, in natural and continuous sequence, unbroken by an intervening cause, produces the injury and without which the result would not have occurred.[4]Pinkerton-Hays Lumber Co. v. Pope, 127 So.2d 441 (Fla. 1961). See also, Fla.Jur.2d Negligence § 30 (1982).
The facts in Kinsey v. Champion American Service Center, 268 S.C. 177, 232 S.E.2d 720 (1977), are strikingly similar to those at bar. There, claimant, a gasoline service station employee, was injured in an altercation with a fellow employee in the course of his employment. The claimant, who was slightly intoxicated, had been asked to leave the premises. He responded by threatening a co-employee with a tire iron, who in turn threw a knife at the claimant. Notwithstanding this altercation, claimant continued with his duties. The next time the co-employee saw the claimant he threw a hammer at him, but again missed. The claimant and the co-employee immediately became engaged in an altercation, during which he was injured. The Supreme Court of South Carolina concluded the injury was compensable because the claimant was subject to the employer's control, was in a place where he should have been, and was in the course of employment. As to the employee's intoxication defense, the court explained that for intoxication to be a bar to a claimant's recovery the intoxication must be the proximate cause of the claimant's injuries, and no proximate cause was shown because "[a]t most, appellant was injured not as a result of his alleged intoxication, but after *840 he had been drinking." Id. at 183, 232 S.E.2d at 723.
I think the same rule should be applied to the facts at bar. Practically four hours had expired from the time appellant last consumed any alcoholic beverage. No doubt alcohol was a contributing factor in his altercation with the co-employee, but his intoxication cannot, I maintain, be considered the primary cause of his injury. This injury, rather, was the result of excessive force the co-employee used in the face of force offered by the claimant which was not likely to cause death or great bodily harm to the other employee. Thus, when determining whether an injury is primarily caused by the employee's intoxication, once evidence is presented involving not only the fact of intoxication but an altercation as well with another employee, it is important to consider whether the co-employee's use of force was justified.
This brings me to the JCC's application of the aggressor defense, in holding alternatively that the injury was not compensable for the reason that Florida has long held that an aggressor in a work-connected fight may not recover compensation, citing Tucker Taxi, Inc. v. Schofield, 107 So.2d 188 (Fla. 1st DCA 1958). Although this court in Tucker Taxi did so state,[5] the facts in Tucker Taxi were far different from those at bar in that they reveal a mutual fight between the employee and his manager. Contrast also the facts in Avalos v. Williford Farms, Inc., 561 So.2d 1344 (Fla. 1st DCA 1990), in which claimant's violent behavior involved kicking the door of his assailant's dwelling and attempting to strike him.
In discussing the meaning of the words "willful intent to injure," Professor Larson observes that they "obviously contemplate behavior of greater deliberateness, gravity and culpability than the sort of thing that has sometimes qualified as aggression." Larson, § 11.15(d), at 3-251. Two factors, moreover, have predominated in determining the applicability of the defense. One is the seriousness of the claimant's initial assault, and the other is the factor of premeditation as opposed to impulsiveness. Id. at 3-252. "If an altercation is spontaneous, impulsive, instinctive or otherwise lacking a deliberate or formed intention to do injury, the statutory defense is unavailable." Kinsey, 268 S.C. at 181, 232 S.E.2d at 722.
The rule the Supreme Court of Louisiana formulated in Velotta v. Liberty Mutual Insurance Co., 241 La. 814, 132 So.2d 51 (1961) is instructive. That case involved a fifty-eight-year-old claimant who, as a result of an argument with a nineteen-year-old employee, impulsively threw trousers at the younger employee, striking him in the face without injuring him. The other employee retaliated by hitting the claimant on the jaw with his fist. The claimant was held entitled to compensation, notwithstanding the statutory bar disallowing an award based upon an employee's willful intention to injure himself or another. In so holding, the court explained that the statutory defense was not enacted to permit employers to avail themselves of the defenses of contributory negligence, fault, or misconduct, because a primary purpose of the Act was to eliminate defenses ordinarily invoked in tort actions. Accordingly, the court placed the following interpretation upon the defense:
The inquiry, under the mandate of the statute, . .. should be limited to whether the employee's injury resulted from the employee's wilful intention to injure himself or another. Impulsive conduct, such as a push, shove, or a fist-blow, does not render the conduct of the employee sufficiently serious or grave, and there is no *841 wilful intention to injure one's self or another under such circumstances. The mere fact that the employee seeking recovery may have been to blame for the fray is not adequate to meet the test  there must be more. The test should involve an inquiry into the existence of some premeditation and malice on the part of the claimant, coupled with a reasonable expectation of bringing about a real injury to himself or another. If the retaliation which flows from his misconduct is not such as could be reasonably expected, his intention could not be held to envision that result and hence is not within the purview of the quoted provisions of the Act.
The defense the employer is entitled to invoke is a statutory one expressed in language that is clear and unmistakable and the superimposing of another doctrine, "aggressor" or otherwise, is not considered appropriate.
Velotta, 241 La. at 821-822, 132 So.2d at 53-54. (Emphasis added; citation omitted.)
In Relish v. Hobbs, 188 So.2d 479 (La. Ct. App.) writ refused, 249 La. 737, 190 So.2d 242 (1966), that portion of the Velotta test relating to the element of premeditation as opposed to the employee's impulsiveness was refined and qualified. There the claimant had told a co-employee to undertake a work-related errand. The co-employee refused, resulting in the parties cursing each other, whereupon claimant threw a hammer at the co-employee, then lunged at him and threw him to the ground until bystanders pulled them apart. The other employee then grabbed a shovel and struck the claimant with it, resulting in the claimant's injury. In affirming a denial of compensation, the Louisiana Appellate Court went to great lengths to explain that it was not receding from the Velotta court's rejection of the aggressor defense in Louisiana. Instead it emphasized the gravity, as well as the intentional character of the claimant's original assault, in deciding whether to apply the statutory defense, saying:
We think the Velotta case holds that wilfulness is not the sole test. The court says: "The test (of wilful intent to injure) should involve an inquiry into (1) the existence of some premeditation and malice * * *, coupled with (2) a reasonable expectation of bringing about a real injury to himself or another." This clearly means that wilfulness, as distinguished from impulsiveness, is not the sole test. Every impulsive act is not condoned by the statute. Some acts, even though impulsive, are so serious and so likely to result in real injury, that they must be construed to show a wilful intent to injure.
Perhaps an illustration will best show our meaning. Velotta impulsively swung a pair of pants at Bailey, conduct which was not sufficiently serious or grave to show a wilful intention to injure. But suppose that, after engaging in a heated argument, Velotta, instead of swinging pants at Bailey, had pulled out a pistol and shot at him. Would we say that since the act was impulsive, growing out of work-connected tensions, it did not show a willful intent to injure? Certainly not.
Applying our interpretation of the Velotta case to the present matter, we think that when Relish threw the hammer at Daniels and then knocked him down and started choking him, this was conduct which, although impulsive, was sufficiently grave and serious that Relish should have had a reasonable expectation the affray would result in a real injury to himself or Daniels. Thus, wilful intent to injure is shown.
Id. at 482.
Applying the above test to the case at bar, I consider that the record clearly shows that claimant's initial assault by twice shoving the co-employee with his open hands was impulsive and lacking whatsoever in any premeditated character. The assault moreover lacked any reasonable expectation of causing real injury to the co-employee. Clearly these facts are far more analogous to those existing in Velotta than those in Relish. Here the co-employee's response to claimant's two shoves by striking claimant with a closed fist to the jaw obviously involved excessive *842 and unreasonable force. The co-employee's retaliation is the type of conduct that has been disapproved not only in workers' compensation cases, but in the criminal sector where pertinent case law has universally rejected the defense of self-defense in situations where unreasonable and excessive force has been used in response to an initial assault by an aggressor. Obviously, pursuant to established case law in the workers' compensation sector, the co-worker's retaliation in the present case was not that which could be reasonably anticipated as proximately flowing from the original actor's misconduct. Therefore, it cannot be said that claimant's injury was one which was primarily caused either by his intoxication or by his willful intent to injure another.
As a final ground for denying compensation, the JCC concluded that the E/C was not under the circumstances estopped from raising the intoxication defense. In so holding she distinguished the facts in the present case from those in West Florida Distributors v. Laramie, 438 So.2d 133 (Fla. 1st DCA 1983), in which this court held that because claimant had been encouraged to drink with customers for business and public relation purposes, the employer could not avail itself of the intoxication defense. In so deciding, the JCC observed that unlike the employer in Laramie, which was a wholesale distributor of wines and liquors, the employer at bar was an air conditioning sales and service company, whose president had specifically discouraged his employees from drinking with customers on the job. Finally, and somewhat confusingly, the JCC concluded: "While it is obvious that the consumption of alcohol at this particular function was condoned, it was equally apparent that steps had been taken by Mike Brown to stop Walter Sterling, Jr.'s consumption and to protect Mr. Sterling by taking his keys and arranging transportation. Under the facts in this case, it is clear that the precedent established in Laramie does not apply."
Although I readily agree with the majority and the JCC that the facts in Laramie are distinguishable from those before us, I cannot agree, for the reasons stated infra, that the employer did not tacitly condone claimant's consumption of alcohol to the point of intoxication. Moreover, both the majority and the JCC appear to have overlooked the Laramie court's adoption of the following rule stated in McCarty v. Workmen's Compensation Appeals Board, 12 Cal.3d 677, 685, 527 P.2d 617, 622, 117 Cal. Rptr. 65, 70, (1974): "[T]he employer's tacit approval and consent amount `to an implied representation that the employer will not hold it against the employee if he drinks, and will not deprive him of his job or of compensation benefits if he does so.'"
This court in Laramie, in holding the E/C estopped from asserting the defense, disapproved the holdings of two cases from other jurisdictions the E/C relied upon in which courts had refused to apply the estoppel exception: Hopper v. F.W. Corridori Roofing Co., 305 A.2d 309 (Del. 1973) and Smith v. Traders & General Insurance Co., 258 S.W.2d 436 (Tex. Ct. App. 1953). In both cases the respective courts held that the statutory intoxication defense was a clear and unequivocal statement of public policy creating a complete defense for intoxication. In Hopper a minor had suffocated by regurgitation as a result of intoxication while attending an office Christmas party. In Smith the employee, following an evening of drinking with his employer during a business trip, fell to his death from the window of a hotel room. Because both courts held estoppel inapplicable under any circumstance, it is difficult to say whether they would have found the employer estopped from raising the intoxication defense if it were available under Delaware or Texas law.
A case far more analogous in its facts to those at bar is Beauchesne v. David London & Co., 118 R.I. 651, 375 A.2d 920 (1977), in which the intoxication defense was raised against a claim for compensation benefits resulting from injuries suffered during an annual Christmas office party. In holding the injury compensable, the court rejected the argument that the E/C's defense of intoxication was complete and therefore left no room for estoppel. *843 The court quoted with approval the same language from McCarty v. Workmen's Compensation Appeals Board, which this court relied upon in Laramie, in estopping the employer from asserting the defense, stating that an employer's approval of and consent to drinking amount to an "`implied representation that the employer will not hold it against the employee if he drinks.'" Beauchesne, 375 A.2d at 924. The Beauchesne court continued: "It is only fair to say that when a recreational activity is sufficiently employment-related to allow recovery and the employer permits the use of alcohol, he has elected to shoulder the risks occasioned by such `spirited' activity." Id.
In my opinion the same result should obtain here. The JCC specifically found in the order that claimant had consumed thirteen to fifteen beers from approximately 1:00 p.m. to sometime between 3:00 p.m. or 4:00 p.m. During this time his belligerent conduct involved ripping pockets off co-employee's shirts, as well as tearing off his own shirt. Additionally, although the employer, after permitting this conduct to continue for two hours or longer, finally took from appellant the keys to the company truck, he nonetheless admitted during his testimony that he placed no restrictions on appellant's continued drinking thereafter. The facts at bar clearly reflect the employer's tacit if not active encouragement of the employee to drink, even to excess, at the company-sponsored annual Christmas party, even when the employer had actual knowledge of the claimant's aggressive and violent behavior beforehand.[6] In my judgment the facts of this case clearly come within the following rule quoted with approval in McCarty v. Workmen's Compensation Appeals Board, 12 Cal.3d at 685, 527 P.2d at 622, 117 Cal. Rptr. at 70:

If the employer permits intoxication, ... or other dangerous practices among his employees, the results thereof are industrial injuries. It is the tacit approval and consent of the employer to be inferred from the fact of his knowledge of these practices, and his failure to terminate them, which makes the special hazard thereby involved incidental to his particular employment and, as such, a source of compensable injuries... .
(Quoting Tate v. Industrial Accident Comm'n, 120 Cal. App.2d 657, 665, 261 P.2d 759, 764 (Ct.App. 1953)).
After considering all of the circumstances, I would reverse and remand the case with directions for the JCC to order the claim compensable.
NOTES
[1] I am aware that unlike the case at bar, the court in Beauchesne also listed as an additional fact supporting a finding of a causal connection that the employers gave to all employees attending the party weekly paychecks and bonus checks. I seriously question whether the absence of this circumstance would have greatly influenced the court's decision to hold the contrary in that it had earlier quoted Larson as saying "that placing the activity `physically in contact with the employment environment' and associating `the time of the activity somehow with the employment' go a long way towards establishing a link between the recreation and employment." Beauchesne, 375 A.2d at 922 (quoting Larson, § 22.11, at 5-63 (1972)).
[2] In that the exclusivity provisions of the Workers' Compensation Act, Section 440.11, Florida Statutes (1987), are inapplicable to claimant's injuries, due to the majority's determination that the claim does not come within the coverage provisions of the Act, he may now be able to pursue a civil action for personal injuries against the employer and the employee who struck him. Cf. Byrd v. Richardson-Greenshields Securities, Inc., 552 So.2d 1099 (Fla. 1989).
[3] Initially, I question the necessity of the majority's entertainment of any additional issue after it had affirmed the JCC's first conclusion, holding that the injury did not arise out of and in the course of employment. Once this issue had been affirmed, it was unnecessary to decide the judge's remaining alternative conclusions. Because the resolution of these additional issues were not essential to the majority's decision, the majority is in essence providing the parties, by addressing the remaining issues, an advisory opinion.
[4] It would, however, be a mistake to associate the term "proximate causation" as typically used in civil negligence actions with the term when considering a workers' compensation case. Although it may have been entirely foreseeable that the co-employee would respond to the claimant's two shoves in the manner in which he did, this does not mean claimant is necessarily barred from recovery. The claimant's fault, unless it is determined that his assault was committed with the intention to willfully injure another, is not an issue.
[5] I think it unfortunate that this court in Tucker Taxi used the term "aggressor" in that it implies that one who initiates a conflict, regardless of the circumstances, cannot recover compensation. Section 440.09(3) denies compensation to an employee who willfully intends to injure or kill himself or another person. The statute does not, however, use the term "aggressor." As the Supreme Court of South Carolina observed in Kinsey, "[T]here is no statutory defense labeled aggressor defense." Kinsey, 268 S.C. at 180, 232 S.E.2d at 721. The court continued: "The statute does not afford a defense based merely on who strikes the first blow. Its application is limited to `those cases where it is shown that the acts of the employee are so serious and aggravated as to evince a willful intent to injure.'" Id. (citation omitted).
[6] The employer was aware that on at least two prior occasions when claimant had apparently consumed alcohol excessively that he had gotten "obnoxious" by threatening other persons with a firearm. Moreover, the employer admitted that following regular working hours, employees, including claimant, frequently consumed beer on the premises.